WILLIAM ROLEY GLOVER and another *v.* SAMUEL T. McALLISTER and others.

The master of a ship which arrived at New Orleans, during an epidemic yellow fever, bound to Natchez, contracted for a fixed price, with the owners of a steamer, to tow his vessel to the latter place, and to start from New Orleans on the evening of the succeeding day. The steamer could not be got ready sooner. Influenced by the apprehension of his passengers for their safety, the master notified the owners of the steamer in the evening of the day on which the contract was made, that he should be compelled to leave in tow of another boat which could start at once. In an action on the contract : *Held*, that from the peculiar circumstances of the case, plaintiffs were entitled to recover only the amount of damage actually sustained, and not the whole amount of profit which they might have derived from the performance of the contract.

APPEAL from the Commercial Court of New Orleans, *Watts*, J. *I. W. Smith*, for the plaintiffs, prayed that the judgment of the lower court might be amended, so as to allow the plaintiffs the

whole amount stipulated in the contract.    Citing Civ. Code, 1298. Pothier, Contr. de Louage, No. 141–3.

*Janin,* for the appellants.

MARTIN, J.    The defendants are appellants from a judgment by which the plaintiffs have recovered damages to the amount of $350, on the breach of a contract by the plaintiffs, as owners of the steamboat Bunker Hill, to tow the ship Ambassador, of which one of the defendants is master, and the others are part owners, from New Orleans to Natchez.    The plaintiffs and appellees have prayed that the judgment may be so amended as to allow them the full sum of $900, claimed in their petition.    The facts of the case are these : The defendant, Hall, master of the ship Ambassador, made an agreement, on the 12th of October, with the captain of the steamboat Bunker Hill, for the towing of the ship from New Orleans to Natchez.    The steamer had, on her preceding voyage, broken a part of her machinery, and a new piece was then being made in a foundry at New Orleans, which was expected to be completed on Sunday morning, the 13th of October ; her captain, therefore, said that he could not depart until the evening of that day.    Captain Hall promised to pay for the towing of the ship $900.    On the evening of the same day, he wrote to the plaintiffs, that owing to the earnest solicitations of his passengers, he was compelled to depart ; and he did so, the ship being towed by another steamer.    The Bunker Hill was ready to start on Sunday evening, and actually did so on the Tuesday following.    The Judge of the Commercial Court thought it his duty to reduce the claim of the plaintiffs to what he terms "naked damages," which we construe to be those actually sustained, without allowing for profits lost.    *The ship arrived at New Orleans with about thirty passengers, at a time when the yellow fever was raging in the city with great violence, and an hour's delay might have endangered the lives of the passengers and crew.*    The appellants' counsel has contended that the extraordinary circumstances in which the master of the ship found

---

* It appears from a statement of the facts of the case made by the counsel of the appellants, that the Ambassador arrived about the 8th of October.    The day of arrival is not shown by the evidence.

himself, authorized a departure from rules made for ordinary cases ; that the plaintiffs ought not to suffer, nor be benefited by the distress of the people on board of the ship ; that any additional expense ιwhich the steamer might have incurred, ought to be charged to the defendants ; but that she would have incurred none, had she started, as the captain first intended, on Sunday evening : and that if the boat remained in the city until Tuesday, it was for her own benefit, and the owners were, no doubt, compensated by additional freight or passengers.

The counsel for the plaintiffs and appellees has urged that the stay of the steamer until Tuesday, was occasioned by the necessity of taking more freight, in consequence of the departure of the ship, and the impossibility of doing this on the Sabbath.

The judge *a quo* was of opinion, that, although the contract was deliberately broken, it was so for reasons which are good and valid in themselves, although foreign to the contract, and we have felt no disposition to differ from him.

*Judgment affirmed.*