## GEORGE SEELIGSON v. S. T. SINGLETARY.

### (Case No. 5579.)

1 INSTRUMENT CONSTRUED—See opinion for instrument held to be a deed and not a mortgage.

2. LIS PENDENS—EXECUTION SALE—PURCHASER—NOTICE—Part of plaintiff's chain of title to the land in controversy was: (1) A deed from B., executed in 1875, conveying to P. such lands as might be adjudged to belong to B. in a certain suit then pending in which B. was one of the plaintiffs; this deed was not recorded until July 21, 1877. (2) A judgment rendered in the suit referred to, adjudging to B. and his co-plaintiffs the land in controversy in this suit, along with other lands. (3) A decree of partition between P. and B.'s co-plaintiffs with commissioners' report and decree, rendered in 1878, vesting title to the land in controversy in P. Defendant claimed that a judgment was rendered against B. in 1873; that execution issued on July 16, 1877, and on July 17, 1877, was levied on B.'s undivided interest above referred to; and that defendant bought at the execution sale. *Held:*

(1) If the action for partition, which resulted in the decree rendered in 1878, was pending at the time the execution, under which defendant claimed, was levied, and if, at that time, B. and P. were parties to that action, and P. was asserting a right to B.'s interest, then the judgment rendered in that suit was conclusive of plaintiff's right.

(2) The fact that the deed from B. to P. was not recorded until after the levy was made would be of no importance.

(3) If such was not the state of the action for partition, defendant was not entitled to protection if he had notice of P.'s right before the execution was levied.

APPEAL from McLennan. Tried below before the Hon. B. W. Rimes.

Appellant brought an action of trespass to try title and for damages against appellee, on April 8, 1882, and alleged that he was entitled to possession of three lots of land, the same set apart and allotted to James Patterson by commissioners of partition and decree of the district court of McLennan county, in cause No. 3153, which was particularly referred to for description, and that defendant dispossessed plaintiff on May 1, 1882. Prayer for judgment for title and possession, writ of possession, damages, costs and general relief. Also prayer in alternative that if he was mistaken as to his ownership of the whole of the lots, or should defendant prove title to one-half of each of the lots, then plaintiff alleged ownership in fee simple of an undivided one-half interest in each of the lots, and prayed judgment accordingly; and in that event prayed for partition, and that commissioners be appointed to make partition in accordance with law, etc.

Defendant pleaded not guilty and general denial. The evidence showed common source under judgment of district court in cause No. 2558, of McLennan county, and through Travis Barron.

Appellant's title was deraigned as follows:

1. Deed from Travis Barron to James Patterson, dated October 28, 1875; recorded July 21, 1877, which instrument was excluded by the court.

2. The judgment of the district court of McLennan county, No. 2558, styled Travis Barron et al. v. Mary S. Barron et al., which suit was pending at date of the Barron deed, and judgment rendered December 13, 1876, under which both parties claimed title.

3. Deeds from Eliza Taylor and husband, C. M. Taylor, and Elizabeth Anderson and husband, Jacob Anderson, to James Patterson, conveying their entire interest in the same land described in the judgment above mentioned; deed dated January 24, 1877, and duly recorded February 24, 1877.

4. The judgment and decree of partition of the district court of McLennan county, (of the land described in the judgment referred to above) which partition judgment was No. 3153, styled A. P. Allday et al. v. James Patterson et al., with report of commissioners accompanying map, showing the number of lots as set apart (among others the same lots sued for) to James Patterson, and decree of district court dated July 2, 1878, vesting title in James Patterson to the lots described in appellant's petition.

5. Deed of trust from James Patterson and wife, A. O. Patterson, to appellant as beneficiary, dated July 22, 1878, duly recorded same day, conveying lots now in controversy, together with others, to secure a debt of $2,378.65.

6. Death of James Patterson, proof of claim of appellant against his estate.

7. Order of sale of the lots in controversy, foreclosure of appellant's mortgage in the county court in the administration, sale by administratrix, report and decree of the court confirming sale to appellant.

8. Deed of administratrix of estate of James Patterson to appellant, dated April 8, 1882, duly recorded, for lots in controversy.

Appellee claiming the interest of Travis Barron under the judgments referred to in numbers two and four above, deraigned title as follows:

1. Judgment in justice court of McLennan county, in the case of Flint & Chamberlain v. Travis Barron, dated April 14, 1873, for $58.00.

2. An execution dated July 16, 1877, and levy, on July 17, 1877, on the undivided interest of Travis Barron in the land (described in the judgment No. 2558, referred to above).

3. Constable's deed for same land to appellee for consideration of $6.00, dated September 4, 1877, duly recorded.

4. Deed from Travis Barron to appellee, dated December 20, 1881; recorded May 22, 1883.

Appellee objected to the introduction of the instrument from Travis Barron to Jas. Patterson, and the court sustained the objections. Appellant's objections to the paper offered as an original execution by appellee, and also to the deed to appellee from Travis Barron, were overruled by the court. The case was tried by the court and judgment rendered in favor of appellee against appellant for all costs of suit, and that appellant take nothing by his suit, etc.

*Thos. C. Smith*, for appellant, cited: Smith v. Shinn, 58 Tex., 1, 4; Hough v. Hill, 47 Tex., 148, 153; Rogers v. Bracken, 15 Tex., 567; Astugueville v. Loustaunau, 61 Tex., 237, 239; Tadlock v. Eccles, 20 Tex., 782; Jordan v. Imthurn, 51 Tex., 287; Pugh v. Mays, 60 Tex., 191; Hart v. Rust, 46 Tex., 556; Campbell v. Everts, 47 Tex., 102, 104; Foster v. Dennison, 9 Ohio, 124; Stratton v. Sabin et al., 9 Ohio, 29, 31; 2 Wait's Acts. and Def., 497.

*Clark & Dyer*, for appellee, cited: Hoyt v. Jaques, 129 Mass., 287 ; Stokes v. Payne, 58 Miss., 614, 38 Am. R., 340; Bloomer v. Waldron, 3 Hill, (N. Y.) 361; Wilson v. Insurance Company, 17 Cent. Law Jour., 500 ; Reese v. Medlock, 27 Tex., 123 ; Ferry v. Laible, 31 N. J. Eq.; Ruffier v. Womack, 30 Tex., 342 ; Beale v. Ryan, 40 Tex., 409 ; Fowler v. Stoneum, 11 Tex., 510 ; Stephens v. Sherrod, 6 Tex., 298 ; Lanfair v. Lanfair, 18 Pick., (Mass.) 299; Steel v. Steel, 4 Allen, (Mass.) 417.

STAYTON, ASSOCIATE JUSTICE.—Both parties claim title to the property through Travis Barron, and on the trial the court refused to admit in evidence the instrument which was the foundation of the appellant's right, upon the ground that it was a mortgage, and upon its face not sufficient to pass title to James Patterson, through whom the appellant claims. That instrument is as follows:

" THE STATE OF TEXAS, )
  McLENNAN COUNTY,  } Know all men by these presents, that I, Travis Barron, of said county and state, for and in consideration of divers sums of money heretofore loaned to me by James Patterson, of said county, and of other divers sums of money paid out for me at my instance and request by the said Patterson, which sums of money are now due and owing from me to the said Patterson, have bargained, sold and conveyed, and by the presents do bargain, sell and convey to said Patterson all my right, title and interest in and to a certain three hundred and two acre tract of land lying and situated in the city

of Waco, in said county. patented to said Barron, and located by virtue of a certificate issued to John Morrow; for which land, or one undivided half thereof, suit is now pending against certain occupants, instituted by myself and the other heirs of Elizabeth Barron, the first wife of Thomas H. Barron, in the district court of said county, and I do hereby authorize and empower the said James Patterson to continue the said suit in my name, for his use, benefit and behoof, and to use and sign my name for any and all purposes which may be necessary in the prosecution of said suit ; and if said suit results in favor of said heirs, then said Patterson is hereby authorized, for me and in my name, to sell and dispose of my said interest and make conveyance of the same, or to have the same set apart to him on proceedings of partition. And I do hereby further authorize my said attorney, for me and in my name, to sue for partition, or otherwise obtain partition, of land lying on Deer creek, Falls county, known as the Robinson survey, patented to Thomas H. Barron, or to sell and convey my interest therein, either before or after the same is partitioned, and all the acts of my said attorney in the premises shall be as binding on me as if I were personally present doing the same. In testimony whereof, I have hereto set my hand, this 28th of October, 1875.

Signed,                        TRAVIS BARRON."

At the time that instrument was executed, an action was pending in the district court of McLennan county, in which Travis Barron, Eliza Taylor and her husband, C. M. Taylor, and Elizabeth Anderson and her husband, Jacob Anderson, and others, were seeking to recover the tract of land of which that in controversy is a part, and it terminated on December 13, 1876, in a judgment in favor of the plaintiffs.

The instrument above copied must be construed in the light of the fact of the suit then pending. The construction of that instrument is not entirely free from difficulty, but to our minds it evidences an intention on the part of its maker to convey to James Patterson whatever interest Travis Barron then had in the entire tract of land. The instrument has application to two tracts of land, and the latter part of it simply confers on James Patterson the power to cause the tract of land known as the "Robinson survey" to be partitioned, by suit or otherwise, in the name of and for the maker, and to sell the interest of Travis Barron in that tract, with or without partition. There is no intimation in that part of the instrument that the acts which James Patterson was empowered to do were in any respect to be for the benefit of himself, nor that the proceeds of that land, if sold, should be used in the payment of any debt which Travis Barron then owed to Patterson or contemplated contracting afterwards.

In reference to that tract of land, the instrument simply conferred a power. The first part of the instrument, which refers to the tract of which that in controversy is a part, recites an indebtedness by the maker to Patterson, which is declared to be the consideration for which the conveyance was made. There is nothing in the instrument to indicate that this indebtedness was to continue after the instrument was executed, and that its purpose was to secure such continuing indebtedness, which is the very life of a mortgage. The language used is such as is most appropriate to evidence the intention of its maker absolutely to convey whatever interest he had in the land, and there are no words of defeasance.

It is true that the instrument conferred upon Patterson the power and right to continue the action then pending in the name of Travis Barron, who was a party to that action, which was but a proper and necessary power, even if the instrument was intended to be an absolute conveyance; for it is not usual or ordinarily proper to substitute the vendee who buys pending an action of that character, in the place of the vendor.

In such case, however, a vendee might well desire to have the express consent of his vendor to prosecute the action to final judgment in the name of the vendor, then a party to the action. Such a power might become necessary for the protection of a vendee. This power was to be exercised, as the instrument on its face declares, for the "use, benefit and behoof" of the vendee.

To what extent was it to inure to the "use, benefit and behoof" of Patterson? The language contains no limitation in this respect, and imports that the exercise of the power was to inure to his sole use, benefit and behoof; and not that it was intended to secure thereby a benefit to the maker, as well as to the vendee, which would have been the case had it been intended that the vendee should hold the land to be recovered in the pending action, simply as a security for a debt due to him from Barron.

The instrument also gave to Patterson power to sell, in the name of the maker, whatever interest the judgment might declare him entitled to in the entire tract. If this clause stood alone, it would indicate that the maker of the instrument was understood to retain some interest in the land which made it necessary or proper that the sale should be in his name, and for him, in order to accomplish the purpose of the parties—that the fee remained in the maker; but, taken in connection with that which precedes, and with that which follows this clause, it is not believed that any such inference can be drawn.

The right or benefit to be secured by sale, was evidently of the same

extent and dignity as the right to have the interest of the maker in the entire tract set apart in partition to Patterson in some proceeding contemplated, which was provided for in the clause immediately succeeding that which professed to give to the vendor the power to sell. Under the one clause, the interest of the maker, segregated from the interest of all the co-heirs of Travis Barron in the entire tract, it was provided, should be set apart to James Patterson on proceedings of partition, and to secure an equal right under a sale made under the preceding clause, the proceeds of the sale would necessarily have to become absolutely the property of Patterson. In the one case, he would own the land set apart as the share inherited by Travis Barron, while in the other, whether the sale was made before or after partition, the proceeds of the sale would be his.

If the instrument had not on its face used words appropriate only in an absolute conveyance, but had simply declared that in consideration of sums of money then due by Barron to Patterson, in partition proceedings to be had thereafter, the interest of Travis Barron should be set aside to Patterson, no court would hesitate to declare that the latter was entitled on partition to a decree vesting such interest in him absolutely, unless there was evidence other than the instrument, sufficient and admissible under well settled rules, to show a contrary intention.

The parties, most likely, contemplated that the property would afterward be repartitioned through a decree of the court, as was subsequently done, and must have inserted the clause before referred to for the express purpose of influencing the action of the court which might make such partition, and for the purpose of enabling the vendee by such a decree, to have vested in him the particular parts of the entire tract to which Travis Barron, but for the conveyance, would be entitled. The inference from the record before us is that, in the partition proceedings subsequently had in the district court, in accordance with this construction of the instrument, the share of Travis Barron was by decree vested in James Patterson.

The instrument on its face conveys the property described in it, and the court below erred in refusing to admit it in evidence. If it was intended, as between the parties, as a mortgage, this could only be made to appear by extrinsic evidence, and whether this could be permitted as against the appellant, need not now be considered. It does not appear whether the action for partition which resulted in a decree, rendered on July 2, 1878, in favor of James Patterson, presumably for the interest to which Travis Barron would have been entitled but for the conveyance before us, was pending at the time the execution in

favor of Flint and Chamberlain was levied on the land; but if it was, and if Travis Barron was a party to that action, and therein, at that time, James Patterson was asserting a right to the interest which Travis Barron inherited, then the judgment rendered in that case is conclusive of the right of the appellant.

In that event, the fact that the conveyance before us was not recorded until after that levy was made would be of no importance whatever. If such was not the state of the action for partition, then the question whether the appellee is entitled to protection, by reason of the levy of the execution under which he bought, before the conveyance to Patterson was recorded, will arise, and upon this, it is clear, from the evidence of the appellee, that he had notice of the right of Patterson before the execution was levied; and the evidence tends to show that, as owner of the execution, or as agent for those who did own it, he had such notice before the levy was made; for he controlled the execution in directing the levy, and in pointing out property to be levied upon.

The record shows that the appellant had the interest in the lands in controversy which James Patterson acquired from Eliza Taylor and Elizabeth Anderson and their husbands, who took as co-heirs or the assignees of one or more co-heirs of Travis Barron, as well as the interest which Patterson acquired through the conveyance from Travis Barron to him; yet, the court below rendered a judgment against the appellant for the entire property. There is no assignment of error noticed in brief of counsel which presents the last matter referred to, and we only notice it in view of the fact that the judgment will have to be reversed on account of the ruling of the court which we have considered, and that in the further conduct of the case the proper disposition may be made of it.

It is ordered that the judgment of the court below be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered May 18, 1886.]