BERNARD CULLEN et al., Cross-Appellants, v. C. A. BUTTERFIELD, Defendant and Appellant, and D. G. BUTTERFIELD, Intervener and Appellee.

**MORTGAGES:** Absolute Deed—Mortgage or Conditional Sale.
1  Whether a deed to land was an absolute conveyance with an agreement on the part of grantee to resell to grantor on certain conditions, or was a mortgage with right to redeem, necessarily is largely

a question of intention, and, in case of doubt, the transaction will be construed by a court of equity as a mortgage. Record reviewed, and *held*, the transaction constituted a mortgage.

**MORTGAGES:** Redemption—Unauthorized Redemption—Resulting
2   Trust—Limitation of Actions. One who knows that his grantor holds the legal title as security only, may not take conveyance from such holder of title and thereby exclude the equitable owner. By taking such conveyance, the grantee, at best, (a) simply redeems for the equitable owner, or (b) constitutes himself a trustee of the property for the equitable owner; and the statute of limitations commences to run from the date of such redemption or of such trusteeship.

**TRUSTS:** Limitation of Actions—Disavowal of Trust. The statute
3   of limitations does not commence to run in favor of a trustee until he disavows the trust and claims title in his own right.

*Appeal from Clinton District Court.*—WILLIAM THEOPHILUS, Judge.

FRIDAY, NOVEMBER 24, 1916.

SUIT in equity brought by the heirs of Thomas Wilson, deceased, to set aside a conveyance of something like 400 acres, made by said Wilson before his death to defendant, C. A. Butterfield, a son of Thos. F. Butterfield's, also deceased.

It is claimed that, at the time the conveyance was made, Thos. Wilson was of unsound mind, and incapable mentally of making a deed, and that the deed was not the free will of Wilson, but was brought about by the undue influence of Chas. A. Butterfield and his father. Defendant Butterfield denied the mental unsoundness of Wilson, and that either he or his father exercised any influence upon said Wilson to induce him to make the deed, and further pleaded that they paid Wilson $11,000 for the land. They further aver that Wilson had rented the land during his lifetime to Thos. F. Butterfield, at the yearly rental of $750, and that, after the death of Thos. F., his estate paid to the Wilson estate the

sum of $12,000, the amount of rental which had accrued at the time of the conveyance to the defendant.

D. G. Butterfield, also a son of Thos. F.'s, and a brother of defendant's, C. A. Butterfield, intervened in the action, claiming that, while Thos. Wilson at one time held title to the land in controversy, the same was deeded to him by intervener and T. F. Butterfield during his lifetime, as security for a loan of money then made and to be advanced in the future, and that the deed was, in fact, a mortgage; that Thos. Wilson, at that time, agreed to hold the land, and to redeed the same to T. F. Butterfield or intervener, upon repayment to him, Wilson, of the sum advanced and to be advanced, with interest at the rate of 7%; that, to evidence said interest payments, Thos. F. Butterfield made and executed to Wilson a series of notes in the sum of $750 each, due on or about the first of December of each year, beginning with the year 1896 and continuing until the year 1912; that defendant at all times had notice and knowledge of the character of the deed to Thos. Wilson, and had such knowledge at the time he took the conveyance from Thos. Wilson, September 27th, 1912; that, since that date, defendant C. A. Butterfield has had possession and enjoyment of said real estate, and has received the rents and profits therefrom. He asked that an accounting between him and C. A. Butterfield be had, and that defendant be held for the rents and profits, and that the court fix the amount which he, intervener, should pay defendant as his share for the redemption of the land, and that title to the land be quieted in intervener.

Defendant answered this petition, averring that the rents and profits of the land did not exceed the amount of taxes paid. He also averred that intervener and his wife also joined in the original conveyance of the land to Thos. Wilson, and that the conveyances to Wilson were absolute, but subject to a resale or conditional sale contract made by Wilson to the Butterfields, to the effect that, if they repaid to Wilson the amount advanced to them by him, and the rental on the

land, as evidenced by the notes which intervener says were intended to represent interest, within five years from the date of the conveyance, Wilson would reconvey the land to intervener and his father, and, if they did not make these payments within the five years, then this right to repurchase the said land was terminated, and Wilson was to have the land as his absolutely; that both intervener and his father neglected to repurchase the land within the time so fixed, failed and neglected to pay the rental notes or the taxes on the land; and that their interest in the lands became forfeited. Defendant also pleaded the statute of limitations, and also the laches of the intervener in asserting his rights.

Intervener, replying to this answer, admitted that he joined in the conveyance made by his father to Wilson, and that the entire property was treated as belonging to T. F. Butterfield; and that he (T. F.) had the sole management thereof, although all but 40 acres belonged to this intervener; and that the arrangement with Wilson was as before stated. He also averred that, for many years, defendant had been the confidential agent of his father, T. F., and that he acted for his said father and this intervener in handling the lands. He pleaded that the rent or interest notes had either been paid, or that renewal notes were executed to Wilson, and that the entire amount thereof was paid to Wilson or his representatives after Wilson's death. He also averred that either he or his father, T. F., or the defendant, had always been in the possession of the lands, had paid taxes, made repairs, put improvements upon the premises, and that Wilson never took possession thereof. He also pleaded that Thos. Wilson acknowledged in writing that he held the lands as security only, and that at no time did he, Wilson, ever deny that he held the lands as security, until he transferred the same to defendant; and that, at that time, defendant's relations to intervener and to the land were such that he could not acquire the title thereto; and that all he is entitled to is reimbursement for the amount he has paid by way

of redemption from Wilson; and that, as he raised the money by mortgage upon the land to pay Wilson, he is entitled to nothing on that account; but that, if he has invested anything, he, intervener, stood ready to pay the same.

Plaintiffs denied the allegations of the petition of intervener; pleaded that the transaction between intervener, his father and Thos. Wilson, was an absolute sale, with a contract for a resale upon certain conditions; that it was not a mortgage, and that intervener and his father failed to make the payments agreed upon, and that they forfeited their rights to repurchase the land. They also pleaded the statute of limitations and laches.

These are, in substance, the issues tendered by the respective parties, and, upon a trial thereof to the court, it was found that, at the time the conveyance was made by Thos. Wilson to defendant, C. A. Butterfield, the grantor Wilson was of sound mind, and that the conveyance was not brought about by undue influence. The court also found that the conveyances by D. G. Butterfield and T. F. Butterfield, in September of the year 1895, were, in fact, intended as security for money advanced, or to be advanced, to T. F. Butterfield; that defendant C. A. Butterfield had notice and knowledge of the character of the transaction; that Thos. Wilson at all times recognized the conveyance to him as a mortgage to secure advancements; and that he deeded the same to defendant in fulfillment of his obligation to redeed the same when reimbursed for the amounts he had advanced; and that the conveyance to C. A. Butterfield amounted to nothing more than an assignment of his claims against D. G. and T. F. Butterfield. It also found that all the money paid by defendant for the land was secured by a mortgage upon the land, and that this mortgage is still outstanding. It also found that all the taxes on the land had been paid by T. F. Butterfield down until September 25th, 1912, and that, from that date, the same have been paid by defendant, and that

he is entitled to recover the same, with interest. It was further found that defendant C. A. Butterfield held title to 400 acres of the land in trust to secure the payment of $10,000 and the taxes paid by defendant C. A. Butterfield; and that, upon payment of the same with interest, defendant should reconvey the same to intervener. The court also decreed that intervener might pay the $10,000, with interest, to the bank from which defendant borrowed the money to make the cash payment on the land to Thos. Wilson, instead of to defendant. Title to the 400 acres was ordered quieted in D. G. Butterfield, subject to the rights of any of the heirs of T. F. Butterfield, not made parties to this action. As to another 40 acres, it was found that defendant held title thereto to secure the sum of $1,000, and that, upon payment of this amount to defendant, title to this 40 should also be quieted in intervener.

A referee was appointed to adjust the rents, profits and amounts paid by defendant, but this referee has not yet made his report. The costs were apportioned between plaintiff and defendant C. A. Butterfield.

Plaintiffs and defendant C. A. Butterfield appeal.— *Affirmed.*

*Pascal & Pascal, Stansbury & Charles,* and *Marcus R. Hart,* for appellants.

*E. L. Miller,* for appellee.

DEEMER, J.—I. The preceding statement sets forth the issues and the decree rendered by the trial court, and it will be observed that the questions on plaintiff's

1. MORTGAGES: absolute deed: mortgage or conditional sale.

appeal are:

1. Was Thos. Wilson, now deceased, insane at the time he conveyed the land to defendant, C. A. Butterfield, on September 27th, 1912?

2. Was this conveyance obtained from Wilson by undue influence exercised by defendant or his father, T. F. Butterfield?

If plaintiffs have established these two propositions, they will be entitled to a decree against the defendant C. A. Butterfield. But, in view of the claims of intervener that the original conveyances from D. G. Butterfield and his wife to Thos. Wilson of the lands in controversy, in September of the year 1895, were not intended as absolute conveyances, but as security merely for the loan of money, they have to face that issue; for, if intervener established his claim by sufficient testimony, plaintiffs took nothing by inheritance from their ancestor, Thos. Wilson. This latter issue is, then, the principal one in the case, and the issues of insanity and undue influence are subordinate to the main question presented by the petition of intervention and the pleadings filed thereto. Unfortunately, both T. F. Butterfield and Thos. Wilson are dead, and, but for written memoranda left by each of them, the case would be troublesome.

On the face of the record, defendant C. A. Butterfield has title to the lands, which consist of 11 forty-acre tracts in Clinton County, through conveyances made by D. G. and T. F. Butterfield to Thos. Wilson, made in September of the year 1895, which deeds were recorded November 27th of the same year, and by a deed from Thos. Wilson to defendant, covering all of the lands, of date September 27th, 1912, recorded the same date. D. G. Butterfield originally held title to all of these lands; but, on the same day that he joined in a conveyance with his father for all the lands to Wilson, he conveyed one 40 to his father, T. F. Butterfield.

We may say at the outset that, under this record, defendant C. A. Butterfield can claim nothing as an innocent purchaser from Thos. Wilson, and no point is made in argument on this proposition. So that the first inquiry in the case is the nature of the transaction between D. G. Butterfield and his father, T. F., in September of the year 1895. Intervener claims that, at that time, Thos. A. Wilson, knowing that both T. F. and D. G. Butterfield were hard pressed for money, and their lands were encumbered by mortgages

and liens which they could not meet, agreed to make them advancements, and to take up some of these liens and encumbrances, and to hold the title as security for the repayment of these advancements; that the deeds were made pursuant to this agreement, which was oral, and that the deed was, in fact, intended as a mortgage by all the parties, and stood as security to Wilson for these advances. Certain memoranda made by T. F. Butterfield and by Thos. Wilson, during the lifetime of each, were offered in evidence, and from these we extract the following:

This memorandum was made by T. F. Butterfield:

"Wednesday, Nov. 27th, 1895. Turned over deeds to 440 acres of land in Secs. 18 and 19, Berlin Township, to Thos. Wilson, 40 acres deeded by T. F. Butterfield, and 400 acres deeded by D. G. Butterfield; deeds were drawn up about the 25th day of Sept.—consideration stated Thirty-five Dollars per acre. Today, Nov. 27th, the deeds were turned over to Wilson, and he made a mortgage on the land to Rand for $2,000, due in two years, $5,000 due in five years; said notes and mortgages were turned over to Holmes. Wilson also turned over $2,000 in cash, a certificate, $100 cash, paid Holmes, $400 note to First Nat. Bank of Lyons. T. F. Butterfield paid Holmes $800 a deposit in bank. $300 check on 1st Nat. Bank, De Witt. $500 note to said Lyons Bank, due in four months, this with mortgage now $7,000, making in all $11,000, being the amount agreed upon to settle the suit and mortgage of P. C. Rand, against Dennis G. Butterfield and others. It was agreed that the said Wilson was to have a lien upon the 440 acres of land for the amount of money he furnished, or paid on the mortgage aforesaid, with seven per cent per annum on all of the money furnished or paid by said Wilson. The said Butterfield to pay the amount of interest on the mortgage at the rate of 7 per cent per annum, and is to pay all taxes on said lands, and the lands aforesaid are to be deeded back to said Butterfield at the expiration of five years from the 27th day of November, 1895, provided

they shall have paid the amount then due on the mortgage and the amount due, said Wilson which he may have paid out, with 7 per cent interest on his money which he may have paid.''

Thos. Wilson made the following memorandum:

''AGREEMENT: I will deed to them on the 27th day of November, 1900, providing they pay me for the same,— in addition to other debts that I may hold against them,— the sum of ten thousand dollars, and a failure on their part to pay the sum of ten thousand dollars, together with other debts that I may hold against them at said above date, shall forfeit this agreement, and the same to become cancelled.

''Dated November 27, 1895.

''THOMAS WILSON.''

And from other memoranda, we extract these statements, reduced to writing by Thos. Wilson:

''The D. G. and T. F. Butterfield land deal in Berlin Township and described as follows and containing 440 acres more or less, being the S.W. ¼ and the W.½ of the S.E.¼ of Sec. 18, and the W.½ of the N. E.¼, and the E.½ of the N.W.¼, and the N. W.¼ of the N. W.¼ of Sec. 19, all in Township 82, Range 2 East of the 5th P. M., to which they make me a warranty deed. The conditions of this purchase is that I am to make them a lease of the land for 5 years for a rent of $700 per year, payable annually to me by the said Butterfields. They are to make and keep in repair all the necessary repairs and improvements that may be required on the place, also to pay all taxes levied on said lands, including the road tax, said repairs, improvements and taxes not to be considered as any part or counted in the rent, nor a loan on the land for the same, but shall be made, kept and performed by them in addition to and independent of the rent. And they are to furnish all material for said improvement and repairs, and a failure of them to pay said

taxes or rent shall at my option cancel the lease, and they to vacate the place at once, and surrender to me possession at once. Each note for each year's rent made payable November 20th of each year for $700, with 7 per cent per annum after due. Providing I am able to and will pay off the mortgage made to Mrs. Rand on Nov. 27th, 1895. I agree to and will, on the 1st day of December, 1900, deed to the said Butterfields, or to who they will direct me to make said deed to, of the above described lands. Providing that they will pay or cause to be paid to me the sum of $10,000, in addition to all other claims, or moneys they may or will owe me on December 1st, 1900, and a failure to make the said payment as above stated shall and will forfeit all or any of this agreement made in this transaction, and the same to be cancelled. The above is a true statement as we agreed to.

"Thomas Wilson."

"November 26th, 1900, I paid up in full to the Lyons First National Bank, the Hannah J. Rand mortgage and took the mortgage and notes up. I find the land advertised for the taxes of 1899. Rent notes past due and unpaid, and agreement made by Thos. F. Butterfield a failure, and I consider all or any understanding I had with him in the matter contained as to that land cancelled.

"Dated December 4th, 1900.

"Thomas Wilson."

"November 27th, 1900. Thomas F. Butterfield called on me, asked what I would do regarding it, replied that if he would pay in full what the land cost me I would deed it to him, said he could not do it, then in that case I would have to take control of the land and do the best I could with it. If he wished I would lease it to him for the term of three years, rent $750 per year, which he accepted. I accordingly made him the lease.

"Thomas Wilson."

These last statements were signed by Thos. Wilson alone, and were objected to by intervener as incompetent, and as statements made by Wilson alone, and not agreed to by either intervener or his father, T. F. Butterfield.

There were also introduced in evidence certain leases made by Thos. Wilson to T. F. Butterfield, or to T. F. and D. G. Butterfield, of all the premises in controversy, covering the period from November 27th, 1895, the date when the deed was recorded, down until March 1st, 1912.

These leases provided for a yearly rental of $700. The leases also provided that the lessee should pay the taxes on the land and keep the premises in repair. Intervener and his father have been in possession of the premises since the conveyance was made. It is admitted that defendant C. A. Butterfield borrowed the money which he paid to Thomas Wilson, amounting to $11,000, from a bank at Lyons, and gave a mortgage on the land as security therefor. Again, it is admitted that, some years ago, Wilson was talking of selling the lands to one Benton; and, when T. F. Butterfield heard of this, he caused Benton to be notified that he, Wilson, had no right to sell the land, and the matter was then dropped.

Intervener and his father, or someone representing them, had rented the land in controversy to others, down until his father's death, which occurred in 1912; and defendant was engaged in looking after his father's business, and, for a time, in looking after the business of intervener. Again, it is shown that, after Wilson sold or transferred the land to defendant, for a small consideration, he declared that he did not care as to the amount of consideration; that he got all of his money out of it, and that was all he wanted. He also declared that the original transaction was a loan to Butterfield, and that he held the land as security.

Still further, it is shown that, at the time of the making of the deed by Thos. Wilson to defendant, he, Wilson, declared, in the presence of attorneys, that he was not seeking

the value of the land, but simply to get his money out of it; and, when an attorney who was present suggested that he should deed the land to Thos. F. Butterfield, he, Wilson, declared, in substance, that it was not his lookout; that they (meaning the Butterfields) should fix the title among themselves.

Thos. Wilson paid the taxes on the land for the years 1902 to 1912 inclusive; but it is shown that intervener supposed these had been paid by defendant, who, it seems, was looking after the father's business during almost the whole time, receiving rentals for the land, and looking after T. F. Butterfield's business.

This is practically all the testimony in the case bearing on the issue between intervener and the plaintiff and defendant. It is strenuously insisted, on behalf of the defendant C. A. Butterfield, that, at best, it shows nothing more than a sale with a conditional agreement to resell, which agreement of resale terminated on November 27th, 1900; and that both intervener and his father lost all interest in the land, because they failed to consummate their agreement to repurchase on the date fixed.

On the other hand, it is argued with equal confidence that the entire transaction constituted nothing more than a mortgage; that this mortgage has never been foreclosed; and that the right of redemption exists or existed in the grantor or grantors or their representatives, at the time this action was commenced. These contentions raise the only point in the case, and the questions presented are of mixed law and fact. We should also state that the land, when sold to C. A. Butterfield, was worth $75 per acre, or $34,000, whereas he, defendant, paid but $11,000 therefor. There is no showing as to the value of the land in 1895, when the conveyance was made in September of that year.

The rules of law are pretty well settled. It is practically agreed that there was either an agreement that grantors might redeem the land within the time stated, the advance-

ments made by Wilson being regarded as a loan, or that
Wilson purchased the land absolutely, and agreed to resell
the same to the grantors within a fixed time, with the under-
standing that their agreement would be forfeited if the
grantors failed to repurchase within the time so fixed. It
is not a case where a party is seeking to show that an abso-
lute deed was intended as a mortgage; for it is practically
agreed that the grantors either had an agreement whereby
they might redeem, or that they had the right to repurchase
upon an agreed compensation.

The question is, Was there a conditional sale, or should
the transaction be held to be a mortgage? This depends
largely upon the intent of the parties, as evidenced by their
conduct, statements and writings, in so far as these writings
are competent.

If there be doubt on the question, courts almost uni-
versally hold that the transaction should be construed to be
a mortgage, and not a conditional sale. *Bradford v. Helsell*,
150 Iowa 732; *Hughes v. Sheaff*, 19 Iowa 335; Jones on
Mortgages (6th Ed.), Secs. 257, 258, and cases cited. As
stated by Jones, a court of equity looks behind the transac-
tion, and will often pronounce that to be an equitable mort-
gage which at law would be considered a conditional sale.
Each case must be determined on its own peculiar circum-
stances; and, if it appears that it was the intention that the
original deed should stand as security for a debt, the trans-
action will be regarded as a mortgage, although expressed
in the form of a conditional sale. If, however, there was
no debt and no advancement, or if there be a debt and that
debt was extinguished by fair agreement between the parties
at the time the conveyance was made, and the grantor had
the privilege of refunding the amount paid or of repurchas-
ing, the transaction is regarded as a conditional sale.

If the transaction was a loan in the first instance, it will
be treated as such to the end, unless it be shown that the

parties afterward bargained for the property independently of the loan. *Richardson v. Barrick,* 16 Iowa 407.

Tested by these rules, we reach the same conclusion as the district court did: that this transaction was a mortgage, and not a conditional sale; and that the grantors, or their representatives, had the right to redeem; and that the decree is right, except it be that the action is barred, or intervener is estopped by his laches from questioning the same.

II. It will be observed that the debt has already been paid to Thos. Wilson. This was done by the defendant, when he undertook to purchase the same from Wilson, and took title in his own name. This so-called purchase either amounted to a redemption, or defendant C. A. Butterfield, in virtue of his relationship to the parties, or by reason of his so-called purchase with knowledge of all the facts, simply became a trustee of the property, holding title for the benefit of the parties entitled thereto. He did not get his title, or assert any interest in or to the lands in his own right, until his purchase in the year 1912. Hence the action is not barred as to them. As the debt to Wilson has been paid, there is no room for the application of the statute of limitations to that debt.

2. MORTGAGES: redemption: unauthorized redemption: resulting trust: limitation of actions.

Moreover, there has been no such laches on the part of intervener as will bar him of his action. He came into this action in August of the year 1914, a little over two years after defendant took title, and no showing of any prejudice resulting to defendant from the delay is shown. Thos. Wilson accepted the money due him, and defendant became trustee of that property, and he, defendant, cannot interpose the plea of the statute of limitations. *Trice v. Comstock,* 121 Fed. 620, 624; *Gebhard v. Sattler,* 40 Iowa 152; *Otto v. Schlapkahl,* 57 Iowa 226.

3. TRUSTS: limitation of actions: disavowal of trust.

III. If plaintiffs had shown themselves entitled to have the deed from Wilson to defendant set aside, they might,

perhaps, have insisted upon the bar of the statute; but it is doubtful if they could do so without returning or offering to return the money secured by their ancestor upon the indebtedness, and as a consideration for the deed to defendant. But, however this may be, they are entitled to no standing in court unless they show that, at the time of the conveyance to the defendant C. A. Butterfield, Thos. Wilson was insane, or that he was unduly influenced in making the conveyance to defendant.

We have gone over the testimony with reference to these issues with care, and are satisfied that plaintiffs have failed to establish either the incompetency of Thos. Wilson, or that he was unduly influenced into making the conveyance. We shall not set out the testimony with respect to these issues, as it would extend an opinion already too long. Whilst Wilson was old and infirm at the time this conveyance was made, he had had no revenue from the lands, and seemed glad to get rid of them, upon a return of the amount advanced to the Butterfields. He had the advice of counsel, and, as we think, had sufficient mental capacity to understand the nature and effect of the transaction.

· The trial court saved the right to all the heirs of T. F. Butterfield, deceased, saved C. A. Butterfield, and the testimony tends to show that there are other heirs. No question was made regarding defect of parties, and we need only add that the rights of these other heirs, if any they have, should not be prejudiced in any manner by the affirmance of the decree below.

We reach the conclusion that the decree should be, and it is—*Affirmed*.

EVANS, C. J., WEAVER and PRESTON, JJ., concur.