(No. 22001.—■■■■)

THE CHICAGO JOINT STOCK LAND BANK *vs.* WILLIAM O'CONNOR *et al.*—(JOHN B. GALLAHER, Receiver, Appellant *vs.* JENNIE O'CONNOR, Appellee.)

*Opinion filed October 21, 1933—Rehearing denied Dec. 14, 1933.*

John A. Dougherty, (George E. Arthur, of counsel,) for appellant.

Mr. Chief Justice Orr delivered the opinion of the court:

This was a bill filed in the circuit court of Winnebago county by the Chicago Joint Stock Land Bank, as the holder of a mortgage on premises in that county, against William O'Connor, Jennie O'Connor and others, to construe as a mortgage the interest acquired by Bert O'Connor, now deceased, under a deed to him and William O'Connor, to subordinate the lien of said alleged mortgage to that of the Chicago Joint Stock Land Bank, and to foreclose the latter mortgage as a first lien. All the defendants were defaulted except Jennie O'Connor, who claimed to be the widow of Bert O'Connor. She filed answers to the original and amended bills and complainant filed replications. The cause was referred to a master in chancery, who found the issues in favor of Jennie O'Connor and recommended a decree foreclosing the mortgage of the bank as a first lien on the premises, subject, however, to the rights of Jennie O'Connor. A· decree was. entered foreclosing the mortgage, subject to the dower interest of Jennie O'Connor in an undivided one-fourth of the premises. Prior to the entry of the decree the bank became insolvent, and appellant, John B. Gallagher, was appointed receiver thereof.

He was substituted as complainant below and has appealed from the final decree.

The amended bill alleged that on March 18, 1925, Bert O'Connor, a bachelor, and William O'Connor, a bachelor, executed and delivered to the bank a mortgage covering the premises in question to secure their note for $5000; that William was then the owner of the premises but that Bert had an interest therein; that at the time title to the premises was taken in the name of William and Bert, in 1923, the latter loaned to the former about $1300 toward the purchase price of the premises, and that to secure repayment of that sum Bert insisted that he should be named with William as a grantee in the deed; that the deed was, in fact, a mortgage so far as Bert was concerned and should be so construed; that thereafter, on or about January 28, 1925, Bert and William applied to the bank for the $5000 mortgage, which was executed March 18, 1925, and that this mortgage was intended to be a first lien on the premises, and, so far as Bert was concerned, his interest or lien was subject and subordinate to the lien of the bank; that on March 25, 1926, Bert died, leaving him surviving certain brothers and sisters, also nieces, the children of a deceased brother, and one Jennie O'Connor, who claimed to be his widow; that Jennie was appointed administratrix of the estate of Bert and was acting as such; that complainant has no personal knowledge of her rights to his estate as his widow but that her rights are subordinate to the lien of complainant. By her answer to the bill Jennie alleged that at and prior to the date of the execution of the mortgage to the bank she was the wife of Bert and that when he died she was his widow, and that by reason thereof she is the owner, by descent, of an undivided one-half interest in the premises. She neither admitted nor denied the allegations of the bill to the effect that Bert had loaned $1300 to William, and that the deed to Bert and William was merely a mortgage so far as Bert was concerned.

The evidence disclosed that prior to the execution of the deed of January 20, 1923, to Bert and William, the latter owned certain land in South Dakota. The record does not disclose whether or not Bert had any interest in that land. William employed a broker named Frye to trade the South Dakota land for the premises in question, a farm in Winnebago county. The trade was arranged on the basis that the South Dakota land was to be taken subject to an existing mortgage for $770, and the farm land in question was to be taken subject to an existing mortgage for $5000. There was also a past due mortgage for $1300 on the farm premises in question. At the time the deal was ready to be closed the broker informed William that he would need $1300 for that purpose. William told the broker that when everything was ready he would get in touch with Bert, with whom he had made some arrangements. Before the deal was closed Bert drew $1300 from his bank account on January 29, 1923, and obtained a bank draft for that amount payable to one of the holders of the $1300 mortgage and on the same date the holders released that mortgage. The trade was consummated and the deed named both Bert and William as grantees. It was dated January 20, 1923, and recorded February 17, 1923, and was made subject only to the existing $5000 mortgage. The evidence disclosed that at that time the farm land in question was reasonably worth $12,000. William paid the general taxes, collected all the rents due from tenants of the farm, as owner served a five-day notice and demand for rent on one of the tenants, and in his own name sued to recover rent. The application to the bank for the $5000 loan and mortgage for the purpose of paying off the existing mortgage for the same amount was prepared by the real estate broker at the solicitation of William but was executed by both William and Bert as bachelors. The draft of the bank for the proceeds of the loan was issued in the names of both.

On the trial the parties stipulated that Bert left him surviving Jennie O'Connor as his widow. While the cause was pending William attended a conference at the office of complainant's solicitors, who questioned him as to the facts in the case. His answers were taken down by a stenographer and typewritten, but he refused to sign the statement. It was not admitted in evidence. In any event, appellant states that the facts covered by the statement are the same as those above outlined. William was the sole witness for Jennie on the trial. He testified that he and Bert had purchased the farm jointly and that he always considered Bert as the owner of one-half thereof, and that although he (William) managed the property, Bert contributed his share whenever there was a shortage.

Section 12 of our act in relation to mortgages (Smith's Stat. 1933, chap. 95, par. 13,) provides that "every deed conveying real estate, which shall appear to have been intended only as a security in the nature of a mortgage, though it be an absolute conveyance in terms, shall be considered as a mortgage." In a case such as this the burden is upon the person claiming the deed to be a mortgage to establish his claim by clear, satisfactory and convincing evidence. *Tucker* v. *Powell,* 318 Ill. 166, and cases there cited; *Council* v. *Bernard,* 319 id. 392; *Mutter* v. *Metzger,* 324 id. 569.

Complainant's claim is that the deed naming Bert and William as grantees is to be construed as a mortgage by William to Bert. Assuming, without deciding, that our statute was intended to apply to a case such as this, where the alleged mortgagor was merely a co-grantee in a deed to himself and his alleged mortgagee, and where the alleged mortgagor therefore did not execute the deed to his alleged mortgagee, we pass to a consideration of the effect of the evidence.

One of the circumstances relied upon by appellant is the value of the farm land acquired as compared to the amount

of money known to have been contributed by Bert toward the purchase price. The value of the farm land at the time of the trade was shown to be $12,000, but there is no evidence that the parties to the trade considered that to be its value at the time. Moreover, the farm land was subject to two mortgages totaling $6300, so its net worth in the trade was only $5700. There is no showing as to the value of the South Dakota land at any time. Appellee attempted to prove the value of that land to be only $800, and that in addition William furnished $500 in cash to make his contribution $1300, equal with that of Bert. Appellant objected to this testimony, but permitted William to testify, without objection, that he furnished, in land and money, only $1300, and that he put into the trade only the same amount, in value, as Bert did. Moreover, the deed to Bert and William provided that they assume and agree to pay the existing $5000 mortgage. By virtue of that provision Bert became liable to pay the mortgage. The mortgage to the bank and the note secured thereby were made to obtain funds to pay off the previous $5000 mortgage. Bert signed the new note above the word "borrower" and William signed his name below that word. Bert again became liable to pay the $5000. For the reasons above indicated, Bert's interest in the trade, so far from being merely that of a lender of $1300, appears to have been equal to that of William.

Other circumstances relied upon by appellant are, that William listed the farm for sale with a real estate broker, paid the general taxes, collected rents from the tenants of the farm, served upon one of the tenants a five-day notice and demand for rent, and brought a suit in his own name against a tenant to recover rent. These circumstances are not necessarily inconsistent with the theory that Bert and William were co-tenants, each owning a one-half interest in the premises. (*Tucker* v. *Powell, supra.*) Moreover, William testified not only that he and his brother owned

the land together equally but also that they shared the profits and losses; that William recognized his brother as owner of an undivided half interest in the property; that the land was taxed to both of them and that they paid the taxes jointly, and that when the rents were insufficient to pay the taxes they both contributed the balance. This evidence is uncontradicted, and, considered in the light of the other evidence in the record, affirmatively disproves appellant's claim that the deed was intended to be a mortgage. The evidence of appellant falls far short of the showing required in cases of this kind.

Appellant also contends that there is no evidence that at the time he made the mortgage to the bank Bert was not a bachelor, and that in the absence of such evidence Jennie O'Connor has no interest in the premises superior to the lien of the mortgage. The bill alleged that at the time of the execution of the mortgage to the bank Bert was a bachelor. In her answer Jennie alleged that at and prior to the date of the execution of the mortgage she was the wife of Bert and that upon his death she became his widow. Although she testified that she was his widow and that she remembered the purchase of the farm in 1923 and the nature of his employment during that and subsequent years, there is no direct evidence that she was married to him at the time the mortgage was executed. In the application for the loan, and in the mortgage, Bert was described as a bachelor. Although it was stipulated by the parties that upon the death of Bert, in March, 1926, Jennie survived him as his widow, this does not establish that they were married at the time the mortgage was executed. For reasons hereinafter stated, we believe the record indicates that the parties considered this stipulation to be sufficient to establish the marriage at the time of the mortgage. The master found that at the time of the execution of the mortgage, "Bert O'Connor, who is also known as Herbert O'Connor, was not a bachelor, but, as a matter

of fact, for many years prior thereto, and at the time of the execution of said mortgage, had as his common law wife Jennie O'Connor, one of the defendants in this cause," and that she survived him as his widow. Although appellant's bill alleged that Bert was a bachelor at the time the mortgage was executed, the real theory of the bill, and the theory of both parties throughout the trial, seems to have been that Bert was married when the mortgage was executed. If this was not appellant's theory, clearly it would have been unnecessary for him to make any issue whatever that the deed was a mortgage, for appellant's mortgage would have been a first lien. Certainly appellant must have proceeded on the theory that Bert was married at the time, for if he was then a bachelor and later married, his widow would have no interest in the premises superior to the mortgage. As it is, the bill is based upon the premise that the deed was a mortgage, and that appellee, as Bert's widow, is entitled to a lien for $1300 superior to the mortgage of the bank. It is inconceivable that appellant would thus seek to subordinate its mortgage except upon the theory that Bert was married at the time, and that unless the deed were construed as a mortgage appellee would be entitled to her interest in the property as a widow who had not joined in the execution of the mortgage. The record indicates clearly that the date of marriage, or the question whether Bert was married at the time of the mortgage, was not made a real issue in the case of appellant. This is further evidenced by the failure of appellant to object or except to the master's findings that Jennie was the wife of Bert at the time the mortgage was executed. Under these circumstances this question is not open to review. *Decatur Coal Co.* v. *Clokey,* 332 Ill. 253.

For the reasons above given, appellant is in no position to attack the findings in the decree with respect to the marriage.

Finding no error in the decree it will be affirmed.

*Decree affirmed.*