## GIBBONS v. GIBBONS et al.

No. 6571. Decided March 24, 1943. (135 P. 2d 105.)

*Leon Fonnesbeck,* of Logan, for appellant.

*H. A. Sjostrom,* of Logan, for respondents.

LARSON, Justice.

An appeal from the District Court of Cache County involving the construction of a written instrument. Plaintiff, as administrator of the estate of Mercy W. Gibbons deceased brought this action against defendants to have a warranty deed executed by deceased to defendant William S. Gibbons declared a mortgage. The deed, fair and regular on its face, and in proper form was executed by the deceased on February 27, 1933, conveying certain real property in Logan City, Cache County, Utah. This deed was delivered and recorded. At the time of the execution of the deed a written agreement was executed between the deceased and defendant William S. Gibbons. Thus, construction of this agreement, with the deed, presents the only questions involved in this action. Plaintiff argues that the agreements construed with the deed, constitutes a mortgage. Defendants

contend the instruments show a sale. The trial court held the deed to be a conveyance, not a mortgage. Plaintiff appeals. For clarity of understanding we set out the agreement, omitting the description of the land:

"Agreement"

"This Agreement, Made and entered into at Logan, Cache County, State of Utah, this 27th day of February, 1933, by and between William S. Gibbons, of Logan, Cache County, State of Utah, hereinafter called the party of the first part, and Mercy W. Gibbons, of Logan, Cache County, State of Utah, hereinafter called the party of the second part, Witnesseth:

"That Whereas, The said party of the second part has this day conveyed to William S. Gibbons, the party of the first part, by warranty deed, for the consideration therein set forth, reserving therein a life estate to the party of the second part, for the following described property in Logan City, Cache County, State of Utah, to wit:

*  *  *  *

"And Whereas, it is desirous to invest the title to the property above described in William S. Gibbons, party of the first part, subject to the life estate of the party of the second part for the following purposes, to wit:

"First. To pay the indebtedness incurred through the funeral expenses of Joseph Gibbons, Senior amounting to the sum of Two Hundred Four and 50-100 ($204.50) Dollars,

"Second. To pay the cost of preparing deed, agreement, revenue filing fees and abstract of title amounting to the sum of thirty-nine, and 50-100 ($39.50) Dollars, making a total indebtedness due said William S. Gibbons of the sum of Two Hundred Forty Four and no-100 ($244.00) Dollars, which said total amount shall bear interest at the rate of seven per cent per annum payable annually.

"It is mutually understood and agreed by and between the parties to this agreement that the said party of the second part is to remain in full possession of the premises during her lifetime and agrees to pay all taxes and assessments that may now be due or to become due against the said premises, and agrees that if the same are not paid when due the said party of the first part may at his option pay the same and add the amount thereof to the indebtedness against the said property and all such amounts with interest thereon at the rate of eight per cent per annum shall be deemed a valid lien against the said premises.

"It is further understood and agreed that any other amounts advanced by the party of the first part by mutual consent of both par-

ties to this agreement shall be deemed a valid lien against the said property.

"It is further understood and agreed that within a period of sixty days after the death of the party of the second part the said property shall be advertised for sale at either public or private sale and any heir of the party of the second part shall have the right to bid on said property and the same shall be sold to the highest and best bidder for cash.

"It is further understood and agreed that upon the completion of said sale the said party of the first part shall be paid all amounts justly due him with interest thereon as herein provided, the remainder, if any, shall be distributed equally among all of the heirs of the part of the second part."

Does this agreement constitute the deed a mortgage? No evidence was taken on this question except the written agreement pleaded and admitted and its construction was submitted to the court as a matter of law.

The recitals in the agreement which it is contended show the deed a mortgage are: The title was invested in defendants "for the following purposes, to wit:" to pay certain indebtedness specified in paragraphs First and Second, amounting to two hundred forty four dollars, with interest and any subsequent amounts advanced by defendants to the grantor. Also the fact that the grantor was entitled to and did remain in possession, and was obligated to pay all taxes and assessments against the property. That these recitals are such as tend to indicate that the conveyance may have been intended as security and therefore a mortgage may be admitted. Continued possession by the grantor without paying rent is an element to be considered when it is sought to show a deed was in fact a mortgage. *Ely* v. *Coriel*, 166 La. 153, 116 So. 834; *Ellis* v. *Purnell*, 167 Md. 687, 176 A. 270; *Selik* v. *Goldman Realty Co.*, 240 Mich. 612, 216 N. W. 422; *Azzalia* v. *St. Claire*, 23 Utah 401, 64 P. 1106; *Prefumo* v. *Russell*, 148 Cal. 451, 83 P. 810. Alone the fact is not conclusive, and may be rebutted. Likewise continued payment of taxes by the grantor is an element that with others may lead to the conclusion the deed

was a mortgage. *Wallace* v. *Greenman*, 321 Ill. 423, 152 N. E. 137; *Chicago Joint Stock Land Bank* v. *O'Connor*, 354 Ill. 207, 187 N. E. 918; *Mayberry* v. *Clark*, 317 Mo. 442, 297 S. W. 39. But these provisions while by themselves tending to show a mortgage relationship must be construed in the light of, and in connection with the other provisions of the agreement.

The recital in the agreement tending to show the transaction was a conveyance subject to a trust and not security for a debt are: That the conveyance had been made by warranty deed for the consideration set forth in the deed; that the grantor had *reserved* to herself *a life estate;* a recital that title was invested in defendant "subject to the life estate" of the grantor; that the conveyance was made *"to pay* the indebtedness"; agreement recites that grantor was to remain in possession during her lifetime; the agreement provides that at expiration of life estate, grantee sell the property by advertised sale, and directs the disposition he must make of the proceeds. (Italics added.)

It seems clear the owner cannot create in himself a life estate while he also holds the fee simple title. The continued possession of the grantor is evidence tending to show a mortgage, but that inference does not stand where as here she by written agreement retains possession under a life estate, which has implicit in it the thought that she is not in possession as equitable owner of the fee. It is well established that to be a mortgage, it must be given *to secure* the performance of an obligation, not in satisfaction of an obligation. 41 C. J. p. 287; also p. 333; also p. 335 and cases cited. *Monagas* v. *Albertucci y Alvarez*, 235 U. S. 81, 35 S. Ct. 95, 59 L. Ed. 139; *Burke* v. *Murphy*, 275 Mo. 397, 205 S. W. 32; *Gassert* v. *Bogk*, 7 Mont. 585, 19 P. 281, 1 L. R. A. 240. Wiltsie on Mortgage Foreclosure, 5th Ed., Vol. 1, p. 42. *Dickens* v. *Heston*, 53 Idaho 91, 21 P. 2d 905, 90 A. L. R. 944; *Gibson* v. *Morris State Bank*, 49 Mont. 60, 140 P. 76; *Osborne* v. *Morgan*, 171 Ill. App. 549. Note the agreement here provides that the deed is given *to pay*

certain indebtedness, not to secure it. This is suggestive of a conveyance not a mortgage. The right of defeasance of the title conveyed, that is, the right to redeem the property, is an essential element of a mortgage. Without a right to redeem the property, the deed cannot be intended as a mortgage. Such right is not conclusive that a mortgage was intended; but without the right there can be no mortgage. *Cullen* v. *Butterfield,* 178 Iowa 621, 160 N. W. 125; *Mooney* v. *Byrne,* 163 N. Y. 86, 57 N. E. 163; *Gilmore* v. *Hoskinson,* 98 Kan. 86, 157 P. 426, 41 C. J. 321. It is not necessary that the word "redeem" be used, if the right exists. *Carson* v. *Lee,* 281 Mo. 166, 219 S. W. 629. The right in the grantor to sell is an element which may tend to show a mortgage, but the right in the grantee to sell and convey to any purchaser is hardly consistent with the theory it was meant for a mortgage. *Seeligson* v. *Singletary,* 66 Tex. 271, 17 S. W. 541; *Floyd* v. *Harrison,* 2 Rob. 161, 41 Va. 161; 41 C. J. 320. If the agreement is such that the sale must be made by or through the grantee, but at the direction or control of the grantor, it may, but not necessarily, be considered as a mortgage. The agreement here involved did not recognize a right of sale in the grantor; a denial of such right seems implicit in the agreement because it imposes the duty of selling upon the grantee. We note that such sale, while imposed on the grantee is in no wise at the direction or option or approval of the grantor, for it is not to be exercised until after her death. The question of inadequacy of price does not enter this case because the grantee could not profit thereby except to recover his investments and interest.

The controlling question is what was the intention of the parties as it existed at the time of the execution and delivery of the instrument? The matters indicated above are merely the elements of the instruments executed, the only evidence in the case, that tend to show the intention of the parties when the instruments were executed. All the factors which are urged as showing a mortgage are

equally consistent with defendants' contentions. On the other hand, the matters tending to show a mortgage was not intended are not consistent or reconcilable with the theory that the deed constituted a mortgage. This agreement provides that defendant has title for certain specified purposes and uses. Those obligations are of course binding on defendant. He must therefore sell the property according to the methods provided in the agreement; reimburse himself for his advancement with interest as provided; and then distribute the balance of the purchase money to the heirs at law of Mercy W. Gibbons, under the provisions of the statutes of succession of the State of Utah.

But one question remains. Should defendant be permitted to receive interest on his advancements until date of sale of the property or only until the spring of 1935 when Mercy W. Gibbons tendered to defendant the money he had advanced to that date? Under the construction of the agreement made by the trial court, and which we uphold, defendant's money was not due and payable until the sale of the property after the death of Mercy W. Gibbons, provided defendant properly attempted a sale within 60 days after her death. Until his claim matured, he could not be deprived of interest by a tender. If he did not properly attempt a sale of the property within 60 days after her death as provided in the agreement, and was not prevented from making or attempting such sale by plaintiff or any of the heirs at law, his claim would mature sixty days after the death of Mercy W. Gibbons.

The judgment appealed from is affirmed. Costs to respondent.

MOFFAT and WADE, JJ., concur.

WOLFE, Chief Justice (concurring).

I concur. Plainly the agreement of February 27th, 1933, raised a trust. The uses of the trust were specific. The decree of the lower court must be construed as quieting title

in the defendants as against the administrator. This leaves the title in William S. Gibbons for the purposes of executing the uses of the trust. It is deemed he will perform them without further action and so as to save expensive litigation and prevent further interest from running.

McDONOUGH, Justice (concurring).

I concur.

As to appellant's contention that the court quiets title against plaintiff administrator and *all those claiming under him,* and by so doing denies the heirs the benefit of the agreement of which they are specified as beneficiaries, it need but be pointed out that by virtue of the conveyance to defendant in trust, there was no title which could pass to the heirs on the death of Mercy W. Gibbons, the grantor. The apparent purposes of the conveyances was to avoid probate proceedings and to constitute the outlays made by the trustee for funeral expenses for his father an investment in the property until the mother passed away. The heirs as such acquired no title upon the death of Mrs. Gibbons for the reason she had conveyed the fee simple title to her son in trust with the absolute power of conveyance without consultation with any of the beneficiaries, such sale to be made in accordance with the terms of the agreement. While the decree fails to mention the obligations of the defendant under his agreement, it, in the light of the issues presented, cannot be construed as a device to impair the rights of the heirs to participate in the proceeds of sale made under the agreement. There is no allegation in the complaint that defendant refuses to perform his obligations thereunder. On sale of the property the defendant is, of course, bound to apply the proceeds in accordance with the terms of the trust.