## THORNLEY LAND & LIVESTOCK CO v. GAILEY et al.

No. 6645.   Decided November 26, 1943.   (143 P. 2d 283.)

*Thomas & Thomas, Judd, Ray, Quinney & Nebeker*, and *Thornley K. Swan*, all of Salt Lake City, for appellant.

*Howell, Stine & Olmstead*, of Ogden, and *Fabian, Clendenin, Moffat & Mabey*, of Salt Lake City, for respondents.

LARSON, Justice.

Plaintiff filed suit in the district Court of Davis County to have a certain quitclaim deed executed by it declared a mortgage, asking an accounting, and offering to pay such sum as the accounting showed still due and owing to defendants. At the close of plaintiff's case, the court granted a non-suit, and dismissed the action. Plaintiff appeals.

In 1936, plaintiff was the owner of the lands in question, subject to certain mortgages originally given to persons not here involved. Defendant Gailey became the owner of

such notes and mortgages. October 24, 1936, plaintiff executed to defendant Gailey a quitclaim deed to the land and at the same time an agreement hereinafter set out was executed between plaintiff and Gailey. Gailey went into possession of the land, received the rents and profits therefrom, and paid the taxes. This situation continued without protest from plaintiff until March, 1943, when plaintiff tendered payment of the amount of the original mortgage indebtedness, and demanded a reconveyance of the land from defendant. Upon refusal of defendant to reconvey, suit was filed to have the deed declared a mortgage and to redeem therefrom. The defendants admit the execution of the deed and the agreement, but contend that the transaction between the parties was one of conveyance of the land in satisfaction of the mortgage indebtedness; and that by the agreement plaintiff was given an option to repurchase the land within one year by payment of an amount equal to the mortgage debt, with interest. Upon the agreement, the deed and an agreed statement of receipts and disbursements, plaintiff rested its case. Since the agreement is the only evidence as to the intention of the parties, and the case turns on the interpretation thereof—that is, was it a mortgage or an option to repurchase—we set it out in full:

"Sale Agreement

"This agreement made and entered into this 24th day of October, 1936, by and between J. R. Gailey, hereinafter referred to as party of the first part, and the Thornley Land and Livestock Company, a corporation, hereinafter referred to as party of the second part, both of Kaysville, Davis County, State of Utah.

"Witnesseth:

"Whereas, the second party has this day deeded to the first party the property hereinafter described for the consideration of Forty-eight Thousand, Nine Hundred Eighty Dollars ($48,980.00) which sum was owing the first party by virtue of notes and mortgages assigned to him by the Barnes Banking Company, and the Fisher Corporation, and

"Whereas, the first party has agreed to permit the second party to redeem said property upon payment of the amount owing him and to permit the second party to sell all or any part of the property herein mentioned in payment of said obligation.

"Now, Therefore, it is hereby agreed that the second party may within one year from the date of this agreement pay to the first party the sum of Forty-eight Thousand, Nine Hundred Eighty Dollars, ($48,980.00), together with interest thereon at the rate of six per cent per annum, and the first party upon receipt of said sum agrees to reconvey to the second party or to such purchasers as it may designate the following described property located in Morgan and Davis Counties, State of Utah:

(Description)

"It is understood and agreed that separate parcels of the property shall not be sold to the disadvantage of the whole, and that the sale price for the separate parcels must be reasonable. In the event of the failure of the parties to agree upon the reasonableness and advisability of selling parcels of said property, the parties shall submit the matter to arbitration upon such terms and conditions as they shall agree upon. All moneys received from the sale of parcels shall be paid over to the first party to be applied upon the obligation owing him.

"In witness whereof the parties have hereunto set their hands and the party of the second party affixed its seal, the date herein above written."

(Signed and Acknowledged)

At first glance, there are some things about the agreement which tend to indicate that it is a mortgage, as for example, use of the word "redeem" which is usually associated with the regaining of some property which has been pledged to secure an obligaton, and use of the phrases "upon payment of the amount owing him," "in payment of said obligation," and "to be applied upon the obligation owing him." All of these phrases connote a present and existing obligation, which would be one of the essentials for a mortgage relationship to arise. Also, the payment of interest is an unusual feature if the agreement is one to sell. On the other hand, the agreement itself is denominated "Sale Agreement," and the consideration is referred to as a sum "which *was* owing the first party by virtue of certain

notes and mortgages" (italics added) indicating that the deed was given in payment of the indebtedness, and this agreement is merely an option to repurchase within a year, as contended by defendants.

But does the word "redeem" *necessarily* import a mortgage, and payment of the debt to regain the property? In *Pace* v. *Bartles,* 47 N. J. Eq. 170, 20 A. 352, at page 359, the court in considering this question says:

"That the mere use of the word 'redeem' is not sufficient to make a contract for reconveyance a defeasance *is* well settled. \* \* \* The word 'redeem' means 'repurchase.' The words are synonyms, and the first has come into use with lawyers, to describe the right of a mortgagor of lands, by reason of the old practice which prevailed in England of making absolute conveyances of lands by way of mortgage, with a covenant to reconvey upon the payment of the debt, an actual reconveyance being made."

To like effect is *Cold* v. *Beh,* 152 Iowa 368, 132 N. W. 73, at page 77, where it is said:

"The word [redeem] has no definite significance. It means to repurchase or to regain, and does not necessarily imply the existence of a valid existing indebtedness." (Bracket added.)

And in *Carson* v. *Lee,* 281 Mo. 166, 219 S. W. 629, 632, the court, in considering the same problem presented in the case at bar, said:

"The word 'redeem' was appropriate to express the equitable right left \* \* \* if the instrument was a mortgage made to secure a debt to the grantee, as the word 'purchaser' was the proper designation of the grantee, if the conveyance was pursuant to a sale. Neither word fixes, necessarily, the nature of the instrument, and both have more than one meaning in law. \* \* \* Whereas, 'redeem' is used in a wider sense than retrieving the title to mortgaged land, and as signifying 'to purchase back.'"

Also in *Steinour* v. *Oakley State Bank,* 45 Idaho 472, 262 P. 1052, 1055, where the court merely states:

"That title, before it can become available to plaintiff, must be redeemed; and 'redeemed' means nothing less than "bought back' from one who legally holds."

The use of the word "redeem" is not inconsistent with defendants' contention that this is merely an option to repurchase rather than a mortgage. Plaintiff places much reliance on the various references to the "obligation" owing defendant, as going to show a present existing debt. The court in *Giesy* v. *American Nat. Bank of Portland, Or.,* D. C. 31 F. Supp. 524, 527, made the following observation, quoting from *Deputy* v. *Du Pont,* 308 U. S. 488, 60 S. Ct. 363, 84 L. Ed. 416:

"although an indebtedness is an obligation, an obligation is not necessarily an 'indebtedness' * * *."

And in *Exchange Bank of Denver* v. *Ford,* 7 Colo. 314, 3 P. 449, 450, 451:

"This word [obligation] has two well-defined legal meanings—one is where it is a name given to the contract itself; the other includes those cases where it refers to the *duty* imposed upon a person in connection with his contract, to perform it, or to a liability arising from his contract, or from his actionable tortious conduct." (Italics in original.) (Bracket added.)

And in *Sawyer* v. *Armstrong,* 23 Colo. 287, 47 P. 391, 392, construing a statute, the Colorado court said:

" 'obligation' is a generic word, and, when used in its broadest sense, includes all kinds of contracts by which a person may become bound, and should be so construed, unless, from the connection in which it is used, it is to be gathered that the legislature intended to give it a more limited signification * * *."

In *Folsom* v. *Carli,* 6 Minn. 420 (Gil. 284), 80 Am. Dec. 456, the court was construing a statute allowing counterclaims in "any other cause of action arising also on obligation." It there said:

"If the word that is employed by the statute, 'obligation,' should be confined within its strict technical sense, it would greatly limit the law of set-off, as it more properly means a 'bond.' * * * But we think the legislature intended it to receive a more liberal construction, and to apply to all matters arising *ex contractu*." (Italics in original.)

Assuming then that the word "obligation" was intended here to mean not a debt but a contract or the duty arising

from such contract, what does the agreement mean and what rights and duties does it impose upon the parties? The agreement imposes no duties upon plaintiff at the outset, though he is given a right—the right to elect to purchase the property at any time within one year. Keeping in mind the above assumption then the agreement would mean that after plaintiff's election to take the property, he is then under a duty of paying defendant $48,980 for it. The provisions giving him the right to sell all or part of the property to another person could well have been put into the agreement so that, if he exercised his option, he could, if the opportunity presented itself, make a favorable sale of a part of the property, have the money therefrom applied on the purchase price that he had become bound to pay, and thus have a better chance of raising the balance. He could have exercised the option to repurchase any time after the execution of the agreement, although he need not discharge his "obligation" under the contract under a year after the execution of the sale agreement. The "obligation" and "the amount owing" then become the purchase price which plaintiff would become bound to pay after exercising his option to purchase. While the wording of the agreement does not make this the only reasonable and logical interpretation in view of the circumstances of the parties, and what they hoped to accomplish we believe it is the only view to be taken. Since the instrument itself is not such "clear, definite, unequivocal, and conclusive" evidence as is required to declare a deed a mortgage *(Chambers* v. *Emery,* 13 Utah 374, 45 P. 192; *Ewing* v. *Keith,* 16 Utah 312, 52 P. 4; *Smyth* v. *Reed,* 28 Utah 262, 78 P. 478; *Hess* v. *Anger,* 53 Utah 186, 177 P. 232) let us turn to a consideration of other matters in an effort to ascertain the intention of the parties.

Speaking through Mr. Justice Moffat, this court said in *Corey* v. *Roberts,* 82 Utah 445, 25 P. 2d 940, 942:

"In determining whether a deed, absolute in its terms, is intended as a mortgage, some of the essential elements to be considered as laid down by the authorities are: Whether or not there was a continu-

ing obligation on the part of the grantor to pay the debt or meet the obligation which it is claimed the deed was made to secure; the question of relative values; the contemporaneous and subsequent acts; the declarations and admissions of the parties; the form of the written evidences of the transactions; the nature and character of the testimony relied upon; the various business, social, or other relationship of the parties; and the apparent aims and purposes to be accomplished."

As it appears from our discussion above, it is not clear from the terms of the agreement whether or not there was an obligation from plaintiff to defendant Gailey existing after the execution of the agreement. There is no evidence as to relative values. A consideration of the acts of the parties must in this instance be coupled with and include their relationship and the apparent aims and purposes to be accomplished. Gailey already held a mortgage covering the property. The plaintiff was in default on payments of this mortgage, and unable to pay. In fact it was in such a situation that the mortgagee would in all probability have to foreclose in order to protect his investment. It is inferable from what happened that plaintiff wanted more time, and Gailey was unwilling to extend the mortgage, and the agreement herein was the result. Defendant went into possession, received the rents from the property and paid the taxes and expenses incident to its operation. He made a sale of some of the property, apparently without protest from the plaintiff. This situation continued for approximately 6½ years from the time of execution of the agreement, or approximately 5½ years after the one-year period to "redeem" had expired, before plaintiff made any move at all with respect to the property or any obligation with regard thereto. No interest was paid during this period and the parties did nothing which would be inconsistent with a full ownership of the property in Gailey. Then for the first time plaintiff makes claim that the deed absolute was in fact a mortgage.

But looking at the situation as it was at the time the agreement was executed, what was the situation of the

parties and what was their intention? That is the controlling question. *Gibbons* v. *Gibbons*, 103 Utah 266, 135 P. 2d 105. Plaintiff clearly wanted more time to pay off the debt and Gailey, while perhaps willing to grant a limited time, could only have one reason for desiring a change in the form of the obligation. He already had a mortgage so what would be gained by a deed absolute if it were to be construed as an equitable mortgage and require foreclosure? The only conceivable reason that Gailey would have for being willing to enter into such an agreement would be to obviate the necessity of a foreclosure suit; and by conveying the property to Gailey plaintiff would escape judgment for the foreclosure expenses the chances of a deficiency judgment against it; and obtain a year's time in which to obtain the property for the amount it then owed with interest. Viewing the situation of the parties at the time and their conduct since that time, the conclusion is inescapable that the agreement was intended to be a sale agreement with option to repurchase within one year. Furthermore, conduct of the parties from the time of execution of the deed until the time of filing of this action indicates that they considered the agreement an option to repurchase and not a mortgage.

Judgment affirmed. Costs to respondents.

McDONOUGH, MOFFAT, and WADE, JJ., concur.

WOLFE, Chief Justice (concurring).

I concur. An examination of the "Sales Agreement" in the light of all the circumstances surrounding the transaction and the apparent purpose for taking the deed and side agreement point to the fact that the intent was to convey all the right, title and interest of the plaintiff absolutely in exchange for an option to buy back for the amount of the former indebtedness within a year. The ambiguities in the Sales Agreement, however explained, do not materially offset the weight of the other circumstances showing the intent to convey absolutely.