337 P.2d 410

Arnell H. WELCHMAN and Eva B. Welchman, Plaintiffs and Appellants,

v.

Merrill J. WOOD, d/b/a Wood Realty Company, and Milo D. Carter, Defendants and Respondents.

No. 8718.

Supreme Court of Utah.

March 28, 1959.

26

Victor A. Spencer, Salt Lake City, for appellants.

Oscar W. McConkie, Jr., Salt Lake City, for respondents.

McDONOUGH, Justice.

Plaintiffs sued defendants, real estate broker and its agent, to recover real estate commission paid incident to the exchange of real properties, or in the alternative for damages for breach of contract in con-nection therewith. From summary judg-ment against them plaintiffs appeal.

The summary judgment was entered upon the basis of the pleadings and the deposition of plaintiff Arnell H. Welchman. On a motion for summary judgment the court is obliged to view the evidence in the light most favorable to him against whom it is directed, and such is our duty on ap-peal.

The plaintiffs had a home valued at $21,-000 upon which there was a large debt which they found burdensome to carry. They desired to sell this property and ac-quire a cheaper home because of their immediate need of cash. They listed the house with the defendants for that purpose. No sale for cash was found for some time. On April 28, 1956, defendant Carter came to the plaintiffs with a proposition which he represented could be handled in such a manner as to meet plaintiffs' need for mon-ey. He had an offer from people named Granger to exchange their home, valued at $10,000 for the plaintiffs' property valued at $21,000, with the balance, after adjust-ing equities, to be paid to plaintiffs by Grangers in monthly instalments under a real estate contract. Mr. Carter assured them that if they would make the exchange, defendants could arrange an $8,600 F.H.A. loan on the Granger home, which would net plaintiffs $3,500 above the indebtedness.

thereon, and that they could also sell their equity in the real estate contract from Grangers for at least $4,000 cash.

The Welchmans insisted upon the necessity for this cash and were unwilling to accept the proposal until Mr. Carter got assurances for them from Mr. Wood himself that such result would be effectuated. They assert that such promise was the inducement which persuaded them, and without which they would not have entered into the trade. As a result of such representation they signed the necessary documents to complete the trade to the Grangers and paid the defendants their commission of $1,050. The defendants' commission from the Grangers was about $500. The financing arrangements to get the anticipated money for the plaintiffs were never carried out.

The listing agreement was introduced as an exhibit. Among other things, it stated that defendants would have the exclusive right to sell or exchange the property at the price stated thereon, or upon terms that the plaintiffs might agree to in writing, or if they agreed to an *exchange* of the property, they would pay the commission for such exchange. On the back of this listing were data as to the characteristics of the home and in a blank space following the words, "will exchange for," was written the word, "money." This information was incorporated by reference in the listing agreement.

Defendants rely on this written agreement. They assert that any subsequent oral agreement in connection therewith would be void under the statute of frauds.[1] Plaintiffs' rejoinder to that charge is thus: the defendants did not in fact perform the written contract in accordance with its terms because it stated that the only basis upon which they would sell or exchange their property was for "money." They urge that the defendants were therefore not entitled to any commission on that contract; that such is the way matters stood when the plaintiffs rejected the proposal for an exchange; and further, that it was only on the basis of a modifying oral agreement that the exchange took place.

It is the plaintiffs' further contention that even if the modifying oral agreement should be deemed within the statute of frauds, there are two reasons why the defendants cannot rely on that defense: first they must rely upon such agreement themselves in order to have any basis for claiming a commission from plaintiffs; second, and more important, that the plaintiffs have fully performed by paying the commission,

---

1. 25-5-4, U.C.A.1953, "Certain agreements void unless written and subscribed * * (5) Every agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation."

28

which full performance would eliminate any application of the statute of frauds, becauses it may not be invoked to perpetrate a fraud or a gross inequity.[2]

It appears to us that there are disputed issues of fact as to whether promises were made by defendants to convert the transaction into cash for the plaintiffs, and whether the defendants are entitled to their commission under the rule that, "the faithful discharge of his duties is a condition precedent to any recovery upon the part of a broker for services he has rendered."[3]

Summary judgment is a drastic remedy and the courts should be reluctant to deprive litigants of an opportunity to fully present their contentions upon a trial. It should be granted only when under the facts viewed in the light most favorable to the plaintiff he could not recover as a matter of law. It is therefore necessary to remand the case for trial. Costs to plaintiffs (appellants).

CROCKETT, C. J., and WADE and WORTHEN, JJ., concur.

HENRIOD, J., concurs in the result.

2. Ravarino v. Price, 123 Utah 559, 260 P.2d 570; Chadwick v. Arnold, 34 Utah 48, 95 P. 527.

3. 4 Am.Jur. Brokers, Sec. 142, p. 1067, quoted in Reich v. Christopulos, 123 Utah 137, 256 P.2d 238.