353 P.2d 460

**Howard W. BRANDT and Leona J. Brandt, his wife, Plaintiffs and Appellants,**

v.

**SPRINGVILLE BANKING COMPANY, a Utah corporation, F. C. Packard and Howard C. Maycock, Defendants and Respondents.**

**No. 9128.**

Supreme Court of Utah.

June 29, 1960.

1. 1936, 89 Utah 520, 57 P.2d 1128, 1130.

McCullough, Boyce & McCullough, Salt Lake City, for appellants.

David E. Salisbury of Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, for respondents.

CROCKETT, Chief Justice.

This is an action by the plaintiffs, Howard W. Brandt and his wife, Leona, against the defendant banking company which appears to be grounded upon a contention that the bank collaborated in a fraud upon them in inducing them to in-

vest $10,000 in a business enterprise with Leona's brother, Waldo W. Jackson.

■ Upon the basis of the pleadings, affidavits, depositions and documentary evidence presented by the parties, a motion for summary judgment was granted in favor of the defendant and against the plaintiffs, from which the latter appeal. We are obliged to review the record in the light most favorable to the party against whom the motion was granted.[1]

During the early part of 1955 the Brandts talked to Mrs. Brandt's brother Waldo about going into business with him. He already owned and operated the Jackson Sales & Service Company, but they didn't want to buy into it, so it was proposed that a new hardware and farm implement business be organized. Waldo suggested that the plaintiffs talk to the defendant F. C. Packard, President of the defendant bank, about the proposal and a way of raising the necessary money. They did so, and the bank's officers assisted them in borrowing the $10,000 needed on mortgages on their home and other property to invest in the business.

On March 2, 1955, the parties met at the bank where final arrangements were made for organization of the new corporation by the plaintiffs and Mr. Jackson, known as The Stockmen & Farmers Mart. It was to acquire part of the hardware and farm implement inventory and certain equipment owned by Jackson Sales & Service, which had been valued at $26,500. The plaintiffs deposited their check for $10,000, which Jackson matched by depositing checks of an equal amount. The bank loaned the new company $6,500 in return for a note in that amount, which was guaranteed by the plaintiffs. A check was drawn by the new company to pay Jackson Sales & Service for the inventory and equipment above referred to.

Presumably, if Waldo Jackson, or Jackson Sales & Service, had spent this money for some other purpose, the plaintiffs would have had no cause to complain. It is because Jackson used it to pay on a note of approximately $41,000 that his company owed to the defendant bank that the plaintiffs contend that the bank had an ulterior motive in promoting the transaction to get the benefit of the money plaintiffs put into the business. Further facts pointed to as supporting this idea are that the $41,000 note just referred to was secured by a mortgage on real property owned by Jackson Sales & Service and a chattel mortgage on its personal property, including the inventory and equipment transferred to the new company, Stockmen & Farmers Mart, which mortgages were on record.

The pivotal proposition relied upon by the plaintiffs is that the defendant bank

---

1. Morris v. Farnsworth Motel, 123 Utah 289, 259 P.2d 297.

and its officers did not reveal to them the existence of the chattel mortgage just referred to, and that they should have done so because they bore a fiduciary relationship to them. They further aver that they would not have invested their $10,000 in the Stockmen & Farmers Mart if they had known of the chattel mortgage; and that it was because of said mortgage that the business failed and they lost their money.

In dealing with the above contention, it should first be observed that under the facts shown as to the bank's involvement in the transaction, we see no basis to support the contention that a fiduciary relationship existed between it, or its officers, and the plaintiffs.

In support of their claim that the bank dealt unfairly with them, the plaintiffs assert that in May, 1955, it put pressure on them to sell some of their inventory and assets in order to pay on the $6,500 note. In September, 1955, they traded some of their assets for a farm in Payson, which was in turn sold, netting $4,300 which was applied on that note. We are unable to see that this transaction has any bearing on the fraud which plaintiffs seek to establish in regard to making their original investment. Nor do we see any logical basis for deducing that it had anything to do with the fact that the Stockmen & Farmers Mart went broke.

It was after the business had failed that the plaintiffs claimed that the defendants had been guilty of fraud and deception in inducing them to enter into it and filed this action on that theory. The plaintiffs were adults and went to the defendant bank expressing an intention to go into a business venture. They are chargeable with the duty of making reasonable investigation and inquiry and with knowledge of whatever facts such inquiry would disclose. It seems a fair assumption that they knew that the Jackson Sales & Service was in debt because they didn't want to go into it, but wanted to form a new company. Whether they had actual knowledge or not, they are charged with such knowledge because the facts were readily available to them upon inquiry. They also knew that their company was taking over part of the inventory of Jackson Sales & Service, which they were paying for, and were upon the duty of inquiry as to how it stood as to that company's debts. It would seem quite beyond reason to permit them to blindly enter into the business without inquiry and then later blame the bank for lack of knowledge of important facts pertaining to an indebtedness upon property they were acquiring. This is particularly so because it was their own brother they were going into business with and he had full knowledge of the facts; and there is no basis upon which to suppose that the bank would suspect that he was concealing information from them, if he in fact did so.

■ Under the circumstances it would be quite impractical, and beyond any legal duty the bank owed the plaintiffs, to require it to step out of its role as a financing institution and act as guardian of the plaintiffs to see that their own brother was making a full disclosure of the facts concerning a business adventure, or to warn them against making an unwise move by going into business with him. It is, of course, to be recognized that the bank could not with impunity affirmatively conceal facts from the plaintiffs nor refuse to reveal pertinent facts upon inquiry, nor otherwise actively deceive or assist in deceiving the plaintiffs. But there is no indication that the bank or its officers did anything of that character nor could they have concealed the chattel mortgage because it was recorded. We are of the opinion that the trial court was correct in its conclusion that there is no basis upon which to predicate a cause of action for fraud and deceit against the defendant.[2]

Further, and of controlling importance, is the fact that there is no indication that the chattel mortgage about which the plaintiffs complain had anything to do with the business going broke. It was never foreclosed and the property described in it was never attached by the bank. The balance of the note of the Jackson Sales & Service Company, secured by the real estate mortgage and the chattel mortgage referred to, was satisfied and discharged by conveyance to the bank of real estate by Waldo Jackson and his company. Therefore it was never necessary for the bank to invoke the chattel mortgage to collect that debt. It is thus clear that there is no basis upon which it could be found that the existence of the chattel mortgage in question had any connection with the failure of the Stockmen & Farmers Mart.

■■ We are cognizant of the desirability of permitting litigants to fully present their case to the court and that a summary judgment prevents this. For that reason courts are, and should be, reluctant to invoke this remedy.[3] Yet the granting of such a motion does have a salutary purpose in our procedure because it eliminates the time, trouble and expense of a trial, when upon the best showing the plaintiff can possibly make, he would not be entitled to a judgment.[4] It is our opinion that the trial court was correct in so analyzing this case and in granting the motion for summary judgment against the plaintiffs.

Affirmed. Costs to defendants (respondents).

McDONOUGH and CALLISTER, JJ., concur.

2. For elements of fraud see Pace v. Parrish, 122 Utah 141, 247 P.2d 273.
3. Holland v. Columbia Iron Mining Co., 4 Utah 2d 303, 293 P.2d 700.
4. Zampos v. United States Smelting, Refining & Mining Co., 10 Cir., 206 F.2d 171.

HENRIOD, Justice (concurring).

I concur in the result for the reasons that the pleadings indicate that the limitations statute, 78–12–26, U.C.A.1953, relating to fraud actions, was properly pleaded and was a bar to the action and the theory on which it was based as against defendants.

WADE, Justice (dissenting).

I dissent. This case, having been disposed of on a summary judgment should be reversed unless the showing made when considered in the light most favorable to the losing party clearly shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [1] So if the showing fails to clearly indicate that plaintiffs do not have proof which would reasonably support a judgment in their favor the judgment should be reversed.

The prevailing opinion states that we must view the evidence in the light most favorable to the losing party. However, the statements of the evidence therein contained are statements of the winning parties' views of the evidence.

I think it clear that plaintiffs, the Brandts, could make a prima facie showing of a fiduciary relationship between them and the officers of the bank to whom they turned for advice before investing in this project. Furthermore, the evidence indicates that they could make such a showing that the bank officers knew that the Jackson business was insolvent and that they advised and arranged the loan of $10,000 to the Brandts to enable them to invest it in the Jackson business under another name with the expectation, which was later realized, that this money which the Brandts borrowed would be applied as payment to the bank on some worthless debts of the old Jackson business. Such a showing would be sufficient to shift the burden of persuasion on the defendants, the bank and its officers, that in advising the Brandts to invest in the Jackson business they did not withhold from them any pertinent information which would have a bearing on the advisability of the Brandts making the investment.[2] In my opinion the fact that Mrs. Brandt is the sister of Mr. Jackson is not sufficient to prevent a fiduciary relationship between the bank and its officers and the Brandts in advising them on the advisability of investing in this project.

1. See Utah Rules of Civil Procedure Rule 56(c), 9 Utah Code Ann.1953, p. 644; also annotation of cases in pocket supplement to this volume, Rule 56(b) and (c).

2. See In re Swan's Estate, 4 Utah 2d 277, 293 P.2d 682.