497 P.2d 23

**Evan B. KJAR and Donna S. Kjar, Plaintiffs and Appellants,**

v.

**Sterling N. BRIMLEY et al., Defendants and Respondents.**

**No. 12441.**

Supreme Court of Utah.

May 8, 1972.

1. In re Fullmer, 17 Utah 2d 121, 405 P.2d 343 (1965).

Orval C. Harrison, of Fuller, Beesley & Decker, Salt Lake City, for plaintiffs and appellants.

Kay M. Lewis, Samuel E. Blackham, of Jensen & Lewis, Salt Lake City, for defendants and respondents.

CALLISTER, Chief Justice:

Plaintiffs initiated this action to recover the statutory penalty (three times the amount of interest paid, as provided in Section 15–1–7, U.C.A.1953) on an alleged loan transaction with defendants, wherein an alleged usurious rate of interest was exacted. Defendants moved for summary judgment, which the trial court granted; plaintiffs appealed therefrom.

At the inception of this opinion it should be related that in defendants' motion for summary judgment there was no assertion that there was no genuine issue as to a material fact but merely a claim that defendants were entitled to judgment as a matter of law. Plaintiffs filed an affidavit in opposition to defendants' motion, wherein the facts supporting plaintiffs' version of the transaction were related. The disputed issues as to material facts raised by the pleadings, interrogatories, and the affidavit were sufficient so as to preclude the trial court from granting summary judgment under Rule 56, U.R.C.P. On appeal, defendants merely assert that the trial court did not abuse its discretion in granting judgment. Under Rule 56(c), U.R.C.P., as amended 1965, the trial court has no discretion, judgment shall be rendered forthwith, if the moving party shows that there is no genuine issue as to any material fact and such party is entitled to a judgment as a matter of law. Conversely, if the standard has not been met by the moving party, the motion must be denied.

In July 1966, the plaintiffs were in default on a mortgage on their home. The institutional mortgagee declined to refinance the obligation and referred plaintiffs to defendants. According to plaintiffs, defendants proposed to refinance by means of a security agreement in the form of an absolute deed with an option to repurchase. Plaintiffs contend that the parties intended from its inception that the transaction was a loan, secured by a mortgage on plaintiffs' home. Defendants have urged that the transaction was a conditional sale, i. e., a sale with an option to repurchase at an advanced price; and, therefore, there was no usury.

On July 31, 1966, defendants executed an earnest money agreement to purchase plaintiffs' home for $19,000; they agreed to pay $6,000 down payment and to secure the remaining sum with a first mortgage. On August 1, 1966, the parties executed a rental agreement, wherein plaintiffs agreed to pay a monthly rental to defendant Mr. Brimley, in the sum of $118, which the agreement recited was to go to principal and interest, plus an amount equal to the monthly amortization of annual taxes and insurance. The maintenance and upkeep were designated the responsibility of plaintiffs. Plaintiffs were granted an exclusive option to sell or buy the house for a period of three years, with plaintiffs to assume and pay all finance costs incident to the transaction. The agreement provided that an attached amortization chart or schedule of payoffs should determine the price of repurchase. The sales price was designated to be the current mortgage balance, plus all finance costs incident to the transaction, plus the amount indicated on the payoff chart for the current month at the time the repurchase was consummated. The in-

itial payoff was $1500 and progressed to $4500, during the thirty-sixth month.

On August 31, 1966, plaintiffs executed a warranty deed to the defendants Brimley. On this same date, Beehive State Bank loaned Brimleys $13,300, which was secured by a mortgage from them on the home; the interest rate was 7 per cent per annum. A closing statement was prepared by the bank, which indicated that plaintiffs had received $6,000; in fact, both parties concede that this was a paper figure and that no money was exchanged. The proceeds from the loan from the bank discharged the prior liens on plaintiffs' home.

There were allegations concerning plaintiffs' subsequent default under the rental agreement. Ultimately, the home was sold on November 1968, to a third party. Plaintiffs executed a closing statement and conveyed by quitclaim deed. Defendants received $3400, in accordance with the payoff schedule in the rental agreement. Plaintiffs' action is predicated on the assertion that this payoff figure together with the portion of monthly payments applied to interest equaled an interest rate in excess of 20 per cent, a usurious rate.

In the instant action, there must be an initial determination as to the nature of the transaction, was it a loan or a sale, since only the former would provide a basis to claim usury.

Whether a transaction in the form of a sale with an option to repurchase is in fact a sale, or a loan disguised as a sale to cover up a scheme to collect usurious interest is an issue for the trier of fact.[1] The controlling question is what was the intention of the parties as it existed at the time of the execution and delivery of the instrument?[2] A mortgage may exist, although the mortgagee has no right to compel payment. The law may imply a promise to repay a debt under particular circumstances of any case, where it is clear that the lender had relied on the property for his security, being satisfied that he is protected by its high value in relation to the amount loaned. If there be a large margin between the debt or sum advanced and the value of the land conveyed, this represents an assurance of payment stronger than any promise or bond of a necessitous borrower or debtor.[3]

In Rizo v. Macbeth[4] the court cited circumstances relevant to the determination of whether an instrument was a deed or a security device:

. . . The adequacy or inadequacy of consideration as compared to the value

1. Kline v. Robinson, 83 Nev. 244, 423 P.2d 190, 194 (1967); Cowles v. Zlaket, 167 Cal.App.2d 20, 334 P.2d 55, 60 (1959).

2. Gibbons v. Gibbons, 103 Utah 266, 271, 135 P.2d 105 (1943).

3. Robinson v. Durston, 83 Nev. 337, 432 P.2d 75, 83 (1967).

4. Alaska, 398 P.2d 209, 212 (1965).

of the property, which is often stated to be the single most important factor. Retention or nonretention of possession. The conduct of the parties before and after the execution of the instrument. The financial condition of grantor at the time of execution of the instrument. The overall relationship of the parties—financial, business, debtor-creditor, etc. Whether the grantor or grantee paid the taxes. The construction of improvements after the execution of the deed. Whether or not revenue stamps were affixed to the instrument. There are others. Generally it can be said that no one of the circumstances is necessarily controlling, but that all present are to be considered.

There is a strong factual similarity between the instant case and Bybee v. Stuart,[5] wherein the subject property was heavily mortgaged, and the mortgagor had defaulted on his obligation and was about to lose his land. The grantee agreed to advance money necessary to pay off the mortgages; the grantor, as security for the money advanced, executed a warranty deed, absolute in form. Contemporaneous with the deed, and as part of the same transaction, the parties drew up an agreement, wherein the grantee was to reconvey the land upon payment of the indebtedness. The grantee further agreed that if the

grantor desired to sell the property, the grantee would convey to the purchaser upon payment of the amount provided in the agreement.

This court stated that a warranty deed, absolute in form, is presumed to convey a fee simple title, or at least whatever title the grantor has; but where there is a written agreement between the parties, contemporaneous with the deed, which indicates that the deed has been given for security purposes, the court will look to the real transaction and treat it as a mortgage. If by the terms of the contract the grantor has the right to sell to a third person, such a fact is a clear indication of the intention of the parties that title should not pass to the grantee.

■ This court further observed that an instrument need not be in any particular form to be a mortgage so long as the intention of the parties is shown, and a mortgage may consist of a warranty deed and a separate contract in writing. In equity, a deed, absolute upon its face, may be shown by parol evidence to have been given for security purposes only; and if such showing be made, equity will give effect to the intention of the parties. This court indicated that the deed and contract in the Bybee case showed all the requisites of a formal mortgage—a conveyance of particu-

5. 112 Utah 462, 468, 469, 189 P.2d 118 (1948).

lar land as security for a debt with the defeasance clause. This court stated:

> . . . This was not merely an equitable mortgage—a security transaction resting partially in parol and cognizable only in equity. The two instruments, taken together, constitute a formal mortgage, cognizable in a court of law. . .

This court concluded that the grantee had not acquired title to the land under the warranty deed; he was a mortgagee.

The instant action is readily distinguishable from Hallstrom v. Buhler,[6] wherein this court held that the trial court did not err in granting a motion for summary judgment, where the only reasonable interpretation of the transaction was that it was a sale and not a loan. This court stated that such conclusion was correct, since the sellers were not given the right to regain the property which they had sold, upon repayment of a given sum, as would be the case if the transaction were one to disguise a usurious loan secured by the property purportedly sold.

■ Under the circumstances of the instant case, there is material issue of fact as to whether the parties intended to create a debtor-creditor relationship and whether the alleged sale was intended to be no

more than a security transaction,[7] since casting a loan transaction in the form of a sale with an option to repurchase will not insulate the transaction from the usury laws.[8] The judgment of the trial court is reversed, and this cause is remanded for a trial on the merits. Costs are awarded to plaintiffs.

TUCKETT, HENRIOD and ELLETT, JJ., concur.

CROCKETT, J., does not participate herein.

---

6. 14 Utah 2d 111, 114, 378 P.2d 355 (1963).

7. Britz v. Kinsvater, 87 Ariz. 385, 351 P.2d 986 (1960) ; West Pico Furniture Co. of Los Angeles v. Pacific Finance Loans, 2 Cal.3d 594, 86 Cal.Rptr. 793, 469 P.2d 665 (1970).

8. Orlando v. Berns, 154 Cal.App.2d 753, 316 P.2d 705, 708 (1957).