**W. M. BARNES COMPANY, a corporation, Plaintiff and Appellant,**

v.

**SOHIO NATURAL RESOURCES COMPANY, a corporation, formerly Sohio Petroleum Company, a corporation, Defendant and Respondent.**

No. 16454.

Supreme Court of Utah.

March 6, 1981.

4. 20 Utah 2d 372, 438 P.2d 542, 544 (1968).

Duane A. Frandsen and Michael A. Harrison, Price, Donald B. Holbrook, Ronald J. Ockey, Lawrence J. Jensen, Salt Lake City, for plaintiff and appellant.

John Preston Creer, Richard G. Allen, Brent O. Ward, Salt Lake City, for defendant and respondent.

STEWART, Justice:

Plaintiff, W. M. Barnes Company ("Barnes"), appeals from the summary judgment of the district court which quiet-ed title to a 37½ percent interest in real property in defendant, Sohio Natural Resources Company ("Sohio"). Barnes asserts that the documents relied on by the court in granting summary judgment represented security for a loan and not a sale.

The property in question is part of an overall parcel consisting of some 5,000 acres located in Uintah County, Utah, and is known as the Asphalt Ridge Properties. The economic value of the property lies principally in the concentration of tar sands. On October 6, 1971, Barnes, as 37½ percent owner, Sohio, as 25 percent owner, and the owners of the remaining interest in the properties, entered into an operating agreement under the terms of which Sohio became the operator of the properties responsible for their development. The expenses and profits of the operation were to be borne by the parties to the agreement in proportion to their ownership interest.

Barnes at that time also sought a $500,-000 loan from Sohio for a wholly unrelated purpose. Sohio declined to make the loan but expressed a willingness to assist Barnes in obtaining a bank loan from Sohio's bank.

On October 7, 1971, Barnes borrowed $500,000 from the National City Bank of Cleveland. On the same day Sohio and Barnes entered into a "Letter of Commitment" prepared by Sohio's counsel. By the terms of the agreement Sohio agreed to pay Barnes at least $500,000 for its 37½ percent interest in the pertinent properties. The agreement gave Sohio the right to meet any bona fide offer of purchase by a third party made prior to December 31, 1972, and provided a thirty-day period in which to exercise this preferential right. Also on October 7, 1971, the parties and the bank entered into an escrow agreement which included a conveyance and assignment, absolute on its face, by which Barnes purportedly conveyed, assigned, and transferred to Sohio all of its right, title, and interest in the pertinent properties. The bank held the document in escrow and used the Letter of Commitment and the conveyance and assignment as security for the $500,000 loan to Barnes. It appears, however, that the

deed was not intended to be an irrevocable conveyance because it would have had no effect if a third party had bought the property and Sohio had declined to exercise its first right of refusal.[1]

On December 29, 1972, the final day for retirement of the note, Barnes notified Sohio of the existence of a prospective buyer willing to pay substantially more than $500,000 for the property. Sohio chose not to exercise its right of first refusal. Barnes did not, however, consummate the sale to the third party.

Barnes failed to repay the bank loan at maturity. Sohio, however, paid the bank the principal amount of the loan, together with accumulated interest. In return the Bank assigned its interest under the Escrow Agreement to Sohio. Since then Sohio has continued to hold the conveyance and assignment in its possession. Nothing further occurred between the parties until 1977 when Sohio sought formal acknowledgment of the assignment and conveyance in order to qualify for recordation pursuant to § 57–3–1, Utah Code Ann. (1953) as amended. Barnes refused.

The dispute revolves around the nature of the above-described transactions. Barnes contends that the deed, even though absolute on its face, was intended as a mortgage and entered into to satisfy the security requirement of Sohio and the bank which provided what was concededly a loan. Barnes claims that he always intended to pay to Sohio the amount Sohio paid to the Bank upon assignment of the note, which was found in Sohio's possession and which had not been cancelled. Sohio, on the other hand, relying on the absolute nature of the conveyance, claims full ownership in the property.

Barnes initiated the present quiet title action. Based upon the deposition of W. M. Barnes, and the exhibits thereto, Sohio moved for summary judgment. The trial court ruled that title should be quieted in Sohio on the ground that the documents pertaining to the transaction constituted, as a matter of law, a sale to Sohio of Barnes' 37½ percent interest. Nevertheless, the court stayed the entry of judgment to afford Barnes the opportunity to present oral argument and to document further its position (consistent with the provisions of Rule 56(c), U.R.C.P.). Barnes did not supplement the record further. On April 2, 1979, the summary judgment that is the subject of this appeal was entered.

Barnes' sole contention on appeal is that summary judgment was inappropriate because a genuine issue of material fact exists which should be tried—namely, whether the parties intended the transaction as a loan or as a sale.

Barnes concedes that the instrument of conveyance to Sohio is absolute in its terms, but nevertheless contends that the intent of the parties was to provide for a pledge of the property as security for a loan, and not to sell it. Barnes further contends that the letter and escrow agreements contain ambiguities that can only be resolved by the introduction of parol evidence. On the other hand, Sohio contends that the only reasonable interpretation to be placed upon the written documents is that they comprise a sale and not a mortgage.

Motions for summary judgment serve the salutary purpose of eliminating the time and expense of a trial when a party is entitled to relief on the law as applied to undisputed facts. *Brandt v. Springville*

---

1. The agreement provides in part:

   The conditions to which our commitment is subject are as follows:

   (i) Should you elect to sell said properties to Sohio, you shall give Sohio written notice of your election not less than sixty (60) days in advance of the date upon which you desire the purchase to be effective.

   (ii) In the event you give such notice of your election to sell said properties, the sale by you and the purchase by Sohio of said properties shall be accomplished not later than the expiration of the said sixty (60) day period, or at such earlier time as Sohio may be prepared to close the transaction.

   (iii) Your election to sell and Sohio's commitment to purchase shall include all of said properties.

   This commitment shall be available to you or your assignee until March 5, 1973. If not called upon by that date, all obligation of this agreement shall terminate.

*Banking Co.*, 10 Utah 2d 350, 353 P.2d 460 (1960). Because the remedy is preemptory, a court in considering a motion for summary judgment must view the facts and the inferences from those facts in the light most favorable to the party moved against. *Rich v. McGovern*, Utah, 551 P.2d 1266 (1976); *Controlled Receivables, Inc. v. Harman*, 17 Utah 2d 420, 413 P.2d 807 (1966); *Strand v. Mayne*, 14 Utah 2d 355, 384 P.2d 396 (1963); *Welchman v. Wood*, 9 Utah 2d 25, 337 P.2d 410 (1959). In all events, "[i]t is not the purpose of the summary judgment procedure to judge the credibility of the averments of parties, or witnesses, or the weight of evidence," and "it only takes one sworn statement under oath to dispute the averments on the other side of the controversy and create an issue of fact." *Holbrook Co. v. Adams*, Utah, 542 P.2d 191, 193 (Utah 1975). Plaintiff has met that requirement in this case.

█ It has long been recognized that a deed absolute in form may be construed as a mortgage if it is intended as security under a parol agreement rather than an outright conveyance. *Kjar v. Brimley*, 27 Utah 2d 411, 497 P.2d 23 (1972); *Corey v. Roberts*, 82 Utah 445, 25 P.2d 940 (1933). See also *Gibbons v. Gibbons*, 103 Utah 266, 135 P.2d 105 (1943); *Thornley Land & Livestock Co. v. Gailey*, 105 Utah 519, 143 P.2d 283 (1943). Parol evidence is of course admissible to show the purpose and intent of parties to a deed. The United States Supreme Court stated in *Peugh v. Davis*, 96 U.S. 332, 24 L.Ed. 775 (1877):

It is an established doctrine that a court of equity will treat a deed, absolute in form, as a mortgage, when it is executed as security for a loan of money. That court looks beyond the terms of the instrument to the real transaction; and when that is shown to be one of security, and not of sale, it will give effect to the actual contract of the parties. As the equity, upon which the court acts in such cases, arises from the real character of the transaction, any evidence, written or oral, tending to show this is admissible. The rule which excludes parol testimony to contradict or vary a written instrument has reference to the language used by the parties. That cannot be qualified or varied from its natural import, but must speak for itself. The rule does not forbid an inquiry into the object of the parties in executing and receiving the instrument. Thus, it may be shown that a deed was made to defraud creditors, or to give a preference, or to secure a loan, or for any other object not apparent on its face. The object of parties in such cases will be considered by a court of equity: it constitutes a ground for the exercise of its jurisdiction, which will always be asserted to prevent fraud or oppression, and to promote justice. [96 U.S. at 336.]

█ A court, in determining the true purpose and character of a document that purports to be a deed, must consider such facts surrounding the transaction as the intention of the parties and the purposes to be accomplished; the existence of continuing obligation on the grantor's part to pay the debt allegedly secured by the deed; the adequacy of the consideration compared with the value of the property; the contemporaneous and subsequent acts of the parties; the relationship of the parties; the party responsible for taxes and improvements; and the form of the written documentation of the transaction. *Kjar v. Brimley, supra; Corey v. Roberts, supra.*

█ On a motion for summary judgment, it is not appropriate for a court to weigh disputed evidence concerning such factors; the sole inquiry to be determined is whether there is a material issue of fact to be decided. *Holbrook Co. v. Adams*, Utah, 542 P.2d 191 (1975). In making that determination, a court should not evaluate the credibility of the witness. It is of no moment that the evidence on one side may appear to be strong or even compelling, and documentary evidence is not dispositive if the intent and purpose underlying the documents are at issue. *Kjar v. Brimley, supra.*

█ The record in this case clearly discloses a dispute as to the intention of the parties regarding the deed in question.

Plaintiff claims it mortgaged its interest in the Asphalt Ridge Properties to the bank as security for the $500,000 loan. Furthermore, W. M. Barnes, president of the plaintiff corporation, stated in his deposition his understanding of the transaction:

Q. Now was it your understanding that you had signed a conveyance when you entered into the escrow agreement?

A. It was my understanding that I pledged my thirty-seven and a half percent interest in the Asphalt Ridge Properties to guarantee a note that I had issued for five hundred thousand dollars for the company.

\* \* \* \* \* \*

Q. And did you at that time discuss with [Mr. Pforzheimer, Sohio's representative] how you intended to obtain the money?

A. I told him that I would like to pledge my property for a loan.

Q. That you'd like to pledge which property?

A. My thirty-seven percent interest in Asphalt Ridge.

\* \* \* \* \* \*

Q. All right, but you went to see Harry Pforzheimer and told him—

A. That I would like to pledge the property for a five hundred thousand dollar loan. My recollection.

Q. Now did you ask Harry for a loan from Sohio?

A. Probably the way the negotiations started, and he asked how much I wanted and I told him I wanted five hundred thousand. And I advised him the Barnes Company [was] willing to collateralize the loan with an assignment of our interest on our portion of the Ridge which is a 37.5% undivided interest.

Q. What happened next?

A. I assume that he said that Sohio was not in the lending business, which would be the normal reply, but that with a letter from them, that the property is worth so much, their bank probably would loan the Barnes Co. the money that I wanted because the property's val-

ue obviously was much greater. Sohio already paid five million for a twenty-five percent interest so a loan for one-fifteenth of this pro rata value on the same property would be well collateralized or Sohio would have made a very foolish investment, it certainly was worth five hundred thousand. But we had no intention of selling the property, of course, for this amount.

\* \* \* \* \* \*

A. . . . Of course, I had no intention of selling the property for five hundred thousand. If I was going to sell the property, I would sell it for much more than that. I had offers outstanding for much more. So that didn't really mean anything, but it was important to the bank that they knew we could obtain five hundred thousand up to the 5th of March of '73, they were safe.

\* \* \* \* \* \*

A. But you understood that you had the duty to pay the bank back?

A. Oh, definitely. There's no question I had to pay the bank, but I had collateral up many many times more than the five hundred thousand dollars we borrowed, and they were safe. Plus substantial cosigners (Sohio), collateralized by an asset far in excess of the loan.

Indeed, the deposition contains testimony that both parties considered the property in question to be pledged as collateral for the loan. The record also discloses that the note was assigned by the bank to Sohio after Sohio paid the indebtedness and that the note was not cancelled.

Whether there was a debtor-creditor relationship between Barnes and Sohio, or a purchase and sale, is an evidentiary issue to be decided by the trial court. Since the deposition of W. M. Barnes and the exhibits thereto raise an issue of material fact, i. e., the intent of the parties concerning the deed, this case should not have been disposed of on summary judgment.

Reversed and remanded for a trial on the merits. Cost to Plaintiff.

MAUGHAN, C. J., and CROCKETT,* and WILKINS,** JJ., concur.

HALL, Justice (dissenting):

The majority of the Court fails to reckon with a further all-important and consistent legal principle without which the much to be desired procedure of summary judgment becomes a shambles.

It has long been established in the law that, although an issue may be raised by the pleadings, the procedure of summary judgment is available to pierce the allegations of the pleadings and to thereby demonstrate that the moving party is entitled to judgment as a matter of law.[1] Where the evidentiary material of the moving party is sufficient on its face, and the opposing party fails to proffer any evidentiary matter when afforded the opportunity to do so, the courts are justified in concluding that no genuine issue of material fact is present, nor would it be at the time of trial.[2]

Applying the foregoing principle to the facts of this case, it becomes readily apparent, as a matter of law, that Barnes did not and cannot meet its burden of raising a genuine issue of material fact, and that the trial court correctly ruled that the conveyance in question adequately expressed the intention of the parties as being that of a sale and not a mortgage.

This case is particularly of the type which lends itself to summary judgment. The plain, unmistakable language contained in the conveyance, as well as the contemporaneous agreements entered into by the parties, make them absolute on their face, and Barnes made no claim nor presented any evidence, by affidavit or otherwise, that any parol agreements existed. In his deposition, W. H. Barnes simply stated that it was *his* "understanding" that the property was pledged and not sold; that it was *his* "recollection" that he offered only to pledge; and that *he* "assumed" Sohio was not in the lending business, yet *he* had "no intention" of selling the property. Hence, the cases cited by Barnes which sanction the introduction of parol evidence to establish the intent of the parties are not apropos.

An instrument of conveyance, absolute on its face, is not to be construed as a mortgage unless it is evident that *both* parties regarded it as such,[3] and a strong presumption arises that the terms thereof express the intentions of the parties. As this Court stated in *Ewing v. Keith*,[4] in an action to declare a deed a mortgage,

> . . . the burden rests on the moving party to overcome the strong presumption arising from the terms of the written instrument, by clear, unequivocal convincing testimony; and if there is a failure to overcome this presumption by testimony clear, plain and convincing, beyond any reasonable controversy, the written instrument will be held to express the intention of the parties.

A review of the documents in the instant case reveals that they speak only in terms of *sale*, not in terms of pledge, mortgage, or security. Also, nothing contained therein can be construed as giving rise to an indebtedness on the part of Barnes to Sohio.[5]

---

* CROCKETT, J., concurred in this case before his retirement.

** WILKINS, J., acted on this case prior to his resignation.

1. *Dupler v. Yates*, 10 Utah 2d 251, 351 P.2d 624 (1960), and cases cited therein.

2. Id.

3. *Ideal Electric Company v. Willey*, 20 Utah 2d 182, 435 P.2d 921 (1968); *Northcrest, Inc. v. Walker Bank & Trust Co.*, 122 Utah 268, 248 P.2d 692 (1952).

4. 16 Utah 312, 52 P. 4 (1898); see also, *Jacobsen v. Jacobsen*, Utah, 557 P.2d 156 (1976); *Thornley Land & Livestock Co. v. Gailey*, 105 Utah 519, 143 P.2d 283 (1943); *Smyth v. Reed*, 28 Utah 262, 78 P. 478 (1904); *Chambers v. Emery*, 13 Utah 374, 45 P. 192 (1896); 3 Powell on Real Property 477.

5. That without a debtor-creditor relationship there can be no mortgage, see *Thomas v. Ogden State Bank*, 80 Utah 138, 13 P.2d 636 (1932).

The Bank obviously loaned Barnes the $500,000 solely on the strength of the letter of commitment which obligated Sohio to purchase the property and pay off the note in the event of Barnes' default. This is evident by reason of the fact that the Bank took no other security of any kind, least of all the property of Barnes. Thus, upon Barnes' default on the note, the Bank could, and did, look only to Sohio for payment pursuant to the terms of the letter of commitment.

Barnes seeks solace in the fact that the Bank assigned the note to Sohio after receiving payment thereon, urging that this evidences an understanding on the part of the Bank as escrow agent that its loan to Barnes was a secured transaction which required the debt to accompany the property, and hence the further requirement of foreclosure. However, as aptly stated by the trial court, even if it be assumed that the Bank would so testify, the writings of the parties, and particularly the letter commitment to purchase would not, as a matter of law, permit an interpretation of the transaction as one of security requiring foreclosure, rather than as one of purchase as explicitly set forth in each of the documents pertaining thereto.

I would affirm the judgment of the trial court.