2006 UT App 304

**Jody BEST, Plaintiff and Appellant,**

v.

**DAIMLER CHRYSLER CORPORATION, Larry H. Miller Chrysler Jeep, and Dan Worth dba Worth's Custom Body & Paint, Defendants and Appellees.**

**No. 20050225–CA.**

Court of Appeals of Utah.

July 20, 2006.

driving the truck back to work from a quick afternoon visit to the local mall—would have on

our conclusion here.

Karra J. Porter, Christensen & Jensen PC, Nathan D. Alder, Salt Lake City, Peter Jones, Hall & Evans LLC, and Malcolm S. Mead, Denver, Colorado, for Appellees.

## OPINION

DAVIS, Judge:

¶ 1 Plaintiff Jody Best appeals the trial court's grant of summary judgment in favor of Defendants Daimler Chrysler Corporation and Larry H. Miller Chrysler Jeep (Miller). We reverse and remand.

## BACKGROUND

¶ 2 In 1995 Plaintiff purchased a used 1993 Chrysler automobile. In 1996 another vehicle traveling at sixty-five miles per hour collided with the front driver's side of the Chrysler, causing the driver's airbag to deploy and the front driver's side portion of the vehicle to incur severe damage. Plaintiff's insurance company determined that the cost to repair the Chrysler exceeded its value, but Plaintiff insisted on having the automobile repaired. Worth Custom Collision Repair (Worth Repair) did the repair work using parts supplied by Miller. In 1997 the Chrysler was involved in another accident in which a vehicle collided into the front driver's side. On that occasion the airbag did not deploy. Damage to the Chrysler was repaired again by Worth Repair.

¶ 3 In 1999 the driver's airbag deployed unexpectedly as Plaintiff was driving in a parking lot. She was allegedly injured and brought an action against Defendants, claiming that the airbag system and its parts were defective. Both parties retained expert witnesses. In Plaintiff's designation of her expert witnesses, she listed Dru Dickson and his city of residence without stating his field of expertise. Dickson subsequently became unavailable, and after the close of discovery and after Defendants had filed motions for summary judgment, Plaintiff sought to substitute a new expert, Gregory Barnett. Defendants opposed the substitution on grounds

John Walsh, Salt Lake City, for Appellant.

that Dickson, the original witness, had never been properly designated. After a hearing on the issue, the trial court permitted Plaintiff to substitute Barnett for Dickson.

¶ 4 Defendants' expert, Michael Cassidy, performed an electronic analysis of the airbag system using a Diagnostic Readout Box II (DRB II) device which indicated that a "front sensor short" had occurred. Cassidy conducted a further physical inspection of the parts and concluded that the airbag had deployed due to the faulty repairs on the steering mechanism, which had, over time, damaged the circuitry of the airbag system. He opined that the following chain of events caused the premature airbag deployment: (1) the steering rack was improperly replaced using aftermarket parts; (2) the improper replacement of the steering rack caused a misalignment of the steering column; (3) the misalignment of the steering column permitted the driver to overrotate the steering wheel and the clockspring component connecting the steering wheel to the steering column; (4) repeated overrotation of the clockspring component damaged the wires in the clockspring; and (5) damage to the wires inside the clockspring resulted in the premature deployment of the airbag.

¶ 5 Plaintiff's expert, Barnett, disagreed with Cassidy's analysis and submitted affidavits in which he attributed the airbag deployment to defective parts provided or installed by Defendants. Barnett did not perform a physical inspection of the vehicle, but based his opinion instead on photographs and video recordings of the car and the DRB II readouts, which he stated were sufficient to diagnose the source of the malfunction. Using these materials, Barnett concluded that the airbag parts were defective upon installation. He indicated that after the first deployment, the airbag could be rearmed only by a Chrysler dealer using Chrysler parts. He also noted that it was unlikely that the defect resulted from improper repairs to the steering mechanism because (1) the signals involved in the DRB II readings would have to pass through the clockspring wires, and any damage to the circuitry would be evident from the reading; (2) Cassidy's method of

checking the clockspring wiring by means of a bypass would be inconclusive because it would measure only output and not input; and (3) an improperly installed steering mechanism would have quickly damaged the clockspring and its wiring and caused the airbag to deploy much sooner after the repairs were made.

¶ 6 Defendants deposed Barnett, and in his deposition, Barnett seemed to concede that a physical inspection was necessary to determine whether certain airbag components were defective. However, Barnett filed supplemental affidavits explaining that his deposition statements were consistent with his affidavit because the meaning of DRB II codes differ depending on whether the airbag system had been deployed and the length of time from which the computer codes were set.

¶ 7 The trial court granted summary judgment in favor of Defendants, concluding that Cassidy's assertions were uncontested because Barnett had not performed a physical inspection or individually tested the components he concluded to be defective. The trial court reasoned that without such an inspection, Barnett's affidavit testimony could not raise a genuine issue of material fact. Plaintiff appealed from the trial court's order.

## ISSUE AND STANDARD OF REVIEW

¶ 8 Plaintiff contends that the trial court improperly granted summary judgment because the competing theories of the parties' expert witnesses give rise to genuine issues of material fact. We affirm summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c).

¶ 9 Defendants argue that summary judgment may be affirmed on the alternative ground that Barnett's affidavits are inadmissible because the trial court erred in substituting him for Dickson.[1] We review the trial

---

1. Defendants did not file a cross-appeal. However, because they "merely desire the affirmance

court's decision to substitute a witness for correctness, but also "afford a trial court very broad discretion in ruling on such a motion." *Boice v. Marble*, 1999 UT 71,¶ 7, 982 P.2d 565.

## ANALYSIS

### I. Genuine Issues of Material Fact

■■■ ¶ 10 Here, where the expert of each party reaches different conclusions as to (1) the proper method for determining what caused the airbag to deploy prematurely and (2) which components in the system were defective, we conclude that a genuine issue of material fact exists.

"[I]t is not the purpose of the summary judgment procedure to judge the credibility of the averments of the parties, or witnesses, or the weight of the evidence," and "it only takes one sworn statement under oath to dispute the averments on the other side of the controversy and create an issue of fact."

*W.M. Barnes Co. v. Sohio Natural Res. Co.*, 627 P.2d 56, 59 (Utah 1981) (citation omitted). Moreover, in opposing summary judgment, Plaintiff need not prove her theory; "[i]t is only necessary for [her] to show 'facts' which controvert the 'facts' stated in [Defendants'] affidavit[s]." *Salt Lake City Corp. v. James Constructors, Inc.*, 761 P.2d 42, 47 (Utah Ct.App.1988).

### A. Proper Method of Diagnosis

■■■ ¶ 11 Defendants first take issue with Barnett's method of diagnosis. They argue that the trial court correctly determined that Barnett's affidavit cannot contradict Cassidy's conclusions because Barnett never performed a physical inspection or individually tested the parts as Cassidy claims to have done. However, Barnett states in his affidavits that, in his opinion, no physical inspection is necessary and that the materials he reviewed sufficiently describe the source and nature of the defect. Resolving the question of whether a physical inspection is necessary to properly diagnose the airbag defect would

require us to weigh Barnett's opinion against Cassidy's to determine which is the more valid or credible. Such an assessment of testimony is outside the scope of our review, and we reserve it for the finder of fact. *See W.M. Barnes*, 627 P.2d at 59.

■■■ ¶ 12 Similarly, Defendants contend that because Barnett never performed a physical inspection, his opinions are merely conclusory and unsubstantiated, and therefore, cannot raise a genuine issue of fact. We agree that " '[a]n affidavit that merely reflects the affiant's unsubstantiated opinions and conclusions is insufficient to create an issue of fact.' " *Smith v. Four Corners Mental Health Ctr.*, 2003 UT 23,¶ 50, 70 P.3d 904 (citation omitted). But here, where Barnett claims that no physical inspection is necessary based on his experience and knowledge of the diagnostic equipment, we cannot conclude that Barnett's opinion is wholly conclusory and unsubstantiated.

■■■ ¶ 13 Defendants also argue that Barnett's affidavits contradict his deposition testimony. They contend that, although Barnett states in his affidavits that no physical inspection is required to determine the defective part, he concedes in his deposition that such a physical inspection would be necessary. Defendants contend that due to the contradiction between Barnett's affidavit and his deposition testimony, the affidavit testimony should be disregarded. Defendants are correct that a deposition is generally more reliable than an affidavit, *see Webster v. Sill*, 675 P.2d 1170, 1172 (Utah 1983), and that "an affiant may not 'raise an issue of fact by his own affidavit which contradicts his deposition, unless he can provide an explanation for the discrepancy,' " *Gaw v. State*, 798 P.2d 1130, 1140 (Utah Ct.App.1990) (citation omitted). However, Barnett's affidavit submitted after his deposition explains the apparent discrepancy between his prior affidavits and his deposition. There he explains that the need for a physical inspection may depend on whether the airbag had been deployed and the length of time from which the computer code was set. The extent to which

---

of the lower court's judgment, they need not, and should not, cross-appeal." *State v. South*, 924 P.2d 354, 356 (Utah 1996).

this explanation may be plausible is outside the scope of our review here. It suffices that for purposes of summary judgement Barnett has offered "an adequate explanation for the contradictory answer." *Webster*, 675 P.2d at 1173.

### B. The Clockspring as the Source of the Defect

¶ 14 Finally, Defendants claim that there is no genuine issue of material fact because Barnett has not disputed Cassidy's conclusion that the airbag deployed after improper repairs caused a short circuit in the clockspring. However, Barnett's supplemental affidavit clearly disputes Cassidy's opinion regarding the clockspring:

> [I] can conclusively state under oath that when the Safing Switch indicates a short [it] conclusively establishes that it was not the clockspring that caused the air bag to explode because the signals showing the Safing Switch short would have to pass through the clockspring in order to register on the scan.

Barnett also challenges Cassidy's method of testing the clockspring and notes that if the clockspring and steering mechanism were defective, the airbag would have deployed much sooner after the steering mechanism had been replaced. Based on his review of the computer analysis, Barnett posits that the clockspring circuitry was sound and that another airbag component was defective. This difference of opinion regarding the clockspring demonstrates that Cassidy's conclusion is not undisputed and that the source of the airbag defect remains a genuine issue of material fact.

### II. Improper Substitution of Barnett as an Expert Witness

¶ 15 Defendants present an alternative ground for affirming summary judgment, claiming that Barnett's affidavits are inadmissible because the trial court erred in allowing Plaintiff to substitute Barnett for Dickson. Defendants contend that Dickson was never properly designated as an expert witness and, as such, Barnett cannot be substituted for an expert witness that was never technically designated an expert witness. As

already noted, in reviewing the trial court's decision to substitute an expert witness, we "afford a trial court very broad discretion in ruling on such a motion." *Boice v. Marble*, 1999 UT 71,¶ 7, 982 P.2d 565.

¶ 16 In the hearing on the motion, Defendants explained that if substitution were permitted, the "main prejudice" would be "delay and the staleness of the evidence." The trial court determined that Plaintiff's designation of Dickson was deficient and that Plaintiff had handled the case in a poor manner; however, it permitted the substitution in the interest of advancing the case and because no evidence had been presented that Plaintiff had misled the court regarding Dickson's availability. The trial court cautioned Plaintiff that it would not tolerate any further dilatory conduct and that Barnett would not be allowed to delay the proceedings by conducting further tests on the vehicle. Given that the court's ruling reflects an effort to balance the competing needs of the parties and to minimize the prejudice to Defendants, we cannot conclude that the trial court abused its discretion in permitting the substitution.

### CONCLUSION

¶ 17 Because Barnett's substitution was within the trial court's discretion and because the expert witnesses in this case have reached different conclusions regarding the proper means of diagnosing the airbag defect and the cause of the defect, we conclude that genuine issues of material fact exist. Accordingly, we reverse the trial court's grant of summary judgment and remand for further proceedings.

¶ 18 I CONCUR: JUDITH M. BILLINGS, Judge.

GREENWOOD, Judge (dissenting in part):

¶ 19 It is with considerable trepidation in this auto mechanics-based case that I respectfully venture a differing conclusion. I concur in all respects with the majority opinion except section I.B. entitled The Clockspring as the Source of the Defect. I believe that there are no valid material issues of fact

regarding identifying the clockspring as the cause of the deployment of the airbag.

¶ 20 Defendants' expert, Michael Cassidy, conducted a thorough analysis of the car's airbag system, as described in the majority opinion. That examination preceded any by Plaintiff and was performed with Plaintiff's permission. Cassidy opined that the replacement steering rack had been installed in the car sometime in the prior six months. The steering rack contained after-market parts and was incorrectly installed. The incorrect installation caused the steering wheel to overrotate, resulting in escalating damage to the clockspring. Cassidy further stated that, based on his inspection and testing of the car's airbag electrical system, the damaged clockspring caused a short circuit in the system, which in turn caused the deployment of the airbag.

¶ 21 Gregory Barnett, Plaintiff's expert, submitted affidavits stating his opinion that the clockspring could not have caused the problem because the Safing Switch indicated a short that could not have emanated from the clockspring. Cassidy countered that the system is incapable of displaying a message that the clockspring caused the short, even if it was the actual cause. He also stated that Barnett had cited portions of a repair manual out of context in support of his opinion and that the manual actually supported a different conclusion. Plaintiff does not repudiate Cassidy's statements. Cassidy further provided detailed testimony about the airbag system's operation and his professional assessment of causation, which I will not further describe.[2]

¶ 22 Although the mechanical analysis is complex, I conclude that Defendants successfully demonstrated the absence of material contested facts to preclude summary judgment in this case. I would therefore affirm.

---

2. I believe it is also noteworthy that before Defendants performed a second inspection of the car Plaintiff had the car disassembled. In that process the clockspring was removed and damaged to the extent that it could not be further tested.